2016 IL App (1st) 143211

THIRD DIVISION
March 30, 2016

Nos. 1-14-3211 & 1-15-2597, consolidated

| | | |
|---|---|---|
| JOHN ISFAN CONSTRUCTION, INC., | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| v. | ) | Appeal from the |
| | ) | Circuit Court of |
| LONGWOOD TOWERS, LLC, a Limited | ) | Cook County, Illinois. |
| Liability Company, BARRY BURKE, PETER | ) | |
| ROGULSKI, and MARINA KAPLAN, as | ) | |
| Independent Executor of the Estate of Morton | ) | No. 06 L 013035 |
| C. Kaplan, | ) | |
| | ) | |
| Defendants | ) | Honorable |
| | ) | Jeffrey Lawrence, |
| (David Husman, Melinda Husman, Lori | ) | Judge Presiding. |
| Greiner, and Michael Husman, | ) | |
| | ) | |
| Respondents-Appellants). | ) | |

PRESIDING JUSTICE MASON delivered the judgment of the court, with opinion.
Justices Fitzgerald Smith and Pucinski concurred in the judgment and opinion.

**OPINION**

¶ 1      Plaintiff John Isfan Construction, Inc. (Isfan), performed remodeling work at Longwood

Towers, an 80-unit condominium development located at 10931-51 South Longwood Drive in

Chicago (the Longwood property). In 2006, Isfan brought suit against Longwood Towers, LLC

(Longwood), the project's developer, for breach of contract and unjust enrichment, alleging an

unpaid balance of $789,835. Longwood was no longer in existence at the time, having been

involuntarily dissolved on March 31, 2005. When Longwood did not appear, the trial court

granted a default judgment to Isfan.

¶ 2      In 2011, nearly two years after obtaining the default judgment, Isfan initiated

supplementary proceedings to collect on the judgment. Specifically, Isfan filed a supplementary

complaint against three former members of Longwood—Michael Husman, Melinda Husman, and Lori (Husman) Greiner—and their father, David Husman, who was not a member of the LLC.  Isfan alleged that the Husmans had received "unlawful distributions" from Longwood from 2002 through 2005, thus entitling Isfan to collect the judgment amount from them.

¶ 3        The Husmans eventually moved to vacate the default judgment against Longwood under section 2-1301(e) of the Code of Civil Procedure (735 ILCS 5/2-1301(e) (West 2012)).  Their motion was denied.  They now appeal, arguing that (1) the default judgment against Longwood is void, because Longwood was never properly served; (2) alternatively, the default should be vacated in the interests of substantial justice, because Isfan did not give Longwood proper notice of the default; and (3) Isfan's third amended complaint against Longwood was legally deficient and therefore insufficient to support the default.  We find that the default judgment is void and reverse.

¶ 4                                      BACKGROUND

¶ 5        The procedural background of this case is complex and confusing.  We describe below the efforts Isfan has made to collect from various parties amounts it claims are due.

¶ 6                                The Underlying Dispute

¶ 7        Longwood, an Illinois limited liability company, was formed in 1997 for the purpose of developing condominiums on the Longwood property, which was owned by Morton Kaplan.  Longwood had four members: Kaplan, Michael, Melinda, and Lori.  David (Michael, Melinda, and Lori's father) was not a member of Longwood, though he loaned money to the company.  Kaplan, a lawyer, served as the company's manager and its designated registered agent.  The company's registered office was Kaplan's office, located at 20 North Wacker Drive, Suite 1900, Chicago, Illinois.

¶ 8        According to Isfan's initial complaint against Longwood, on October 1, 1997, Kaplan, as Longwood's managing member, entered into an oral contract with John Isfan under which the latter agreed to rehabilitate and remodel the Longwood property for $1,480,000. In 1998, John Isfan incorporated as John Isfan Construction, Inc., and his interest in the Longwood contract was transferred to the corporation.

¶ 9        A dispute arose over payment of amounts Isfan claimed were due, and on May 9, 2003, Isfan recorded a subcontractor mechanic's lien on the Longwood property. Isfan represented that in addition to the originally contracted work, it had provided $762,185 of "additional work" and "extra materials" for the Longwood property at Kaplan's request. The work was completed on May 5, 2003, but Longwood and Kaplan allegedly failed to pay the balance.

¶ 10                                The 2003 Litigation

¶ 11        In November 2003, Isfan brought suit against Longwood, Longwood Towers Condominium Association, and Kaplan for (1) foreclosure of the mechanic's lien, (2) breach of contract, and (3) unjust enrichment. As it did in the mechanic's lien, Isfan alleged that it had provided additional work and extra materials in connection with the property's development. Isfan alleged that the outstanding balance had grown to $789,835.

¶ 12        The trial court granted summary judgment to Longwood on the mechanic's lien claim, finding that the lien was invalid on its face because Isfan purported to assert its lien for all of the work done against the building as a whole, rather than against the individual condominium units on which Isfan had worked. See 765 ILCS 605/9.1 (West 2002) (section of the Condominium Property Act specifying that liens on condominium property must be made against individual unit(s)). Further, because Isfan had no contractual relationship with the condominium association, the association was dismissed from the action. See *Springfield Heating & Air*

*Conditioning, Inc. v. 3947-55 King Drive at Oakwood, LLC*, 387 Ill. App. 3d 906, 914 (2009) (if a subcontractor has no contractual relationship with the property owner, its sole remedy against the owner is through the Mechanics Lien Act (770 ILCS 60/0.01 *et seq.* (West 2008))). Per the trial court's direction, Isfan released the invalid mechanic's lien on May 15, 2005. Isfan's remaining claims were dismissed for want of prosecution on December 16, 2005.

¶ 13    Meanwhile, on March 31, 2005, during the pendency of the 2003 suit, Longwood was involuntarily dissolved.

¶ 14    The 2006 Litigation and Default Judgment Against Longwood

¶ 15    In 2006, Isfan renewed its efforts to collect the balance it claimed was due. On December 13, 2006, it filed a five-count complaint that repled the previously asserted claims for unjust enrichment and breach of contract against Longwood (counts I and II) and asserted new claims for legal malpractice arising out of the defective mechanic's lien against Kaplan (count III) and two other attorneys, Barry Burke (count IV), and Peter Rogulski (count V).

¶ 16    In February 2007, nearly two years after Longwood was dissolved, Isfan obtained an alias summons directed to both Kaplan individually and Longwood "c/o Mort Kaplan." Isfan directed the sheriff to serve Kaplan individually and as Longwood's agent at 33 North LaSalle Street, 34th Floor, Chicago, Illinois. (The Secretary of State's website does not list this address as ever being an address for Longwood.) On March 9, 2007, the sheriff purportedly served Kaplan individually and as "registered agent, authorized person or partner" of Longwood with the alias summons and original complaint at the 33 North LaSalle Street address. Process was never served on the Illinois Secretary of State, as agent for the defunct Longwood, or transmitted to Longwood's registered office address at 20 North Wacker Drive. Longwood never filed an

appearance or participated in the action. Kaplan appeared on his own behalf, but he did not appear on behalf of Longwood.

¶ 17        Kaplan died on February 10, 2008. His wife, Marina Kaplan, was named as independent executor of his estate. Isfan filed its third amended complaint on May 14, 2008, naming Marina as a defendant in her capacity as executor of Kaplan's estate. On May 29, 2008, the trial court gave Kaplan's attorney permission to withdraw based on Kaplan's death and counsel's representation that Marina had "not been cooperative" with him. Marina eventually appeared through new counsel to defend the claims against Kaplan and his estate.

¶ 18        On July 15, 2008, after Kaplan's attorney had withdrawn, Isfan moved for default against Longwood for failing to appear or answer the third amended complaint. Isfan initially mailed notice of the motion to Kaplan's former attorney who had withdrawn. A later notice was mailed to Marina at her home address in Northfield, Illinois. (At the time the notice was mailed, Marina had not yet been served with the third amended complaint. After 10 unsuccessful attempts to effect personal service on her, Isfan effected service by mail on October 29, 2008; Marina did not appear through counsel until November 25, 2008.) Isfan did not serve notice of its motion for default on any of the other parties in the action, any of the Husmans, or on the Illinois Secretary of State.

¶ 19        The trial court entered an order of default against Longwood on July 23, 2008. On March 20, 2009, Isfan filed a "Motion for Judgment on Prove Up of Damages," sending notice of the motion solely to Marina at her home. Although Marina had by then appeared through counsel, Isfan did not send the notice to her counsel. After its initial presentment, the motion was continued to April 28.

¶ 20        On April 28, 2009, following a prove-up, the trial court, per Judge Elrod, entered a default judgment against Longwood for the full amount requested by Isfan. An affidavit by John Isfan in the record attests generally to the amount claimed due, but the record does not contain any supporting documents or a transcript of the prove-up hearing.

¶ 21        The court did not certify the order for immediate appeal. (At the time, the legal malpractice claims against Kaplan and Burke had been dismissed, but count V against Rogulski was still pending.) Even though the judgment was not yet final, Isfan served citations to discover assets on Michael and David in September and October 2009, respectively. Each citation stated that a judgment had been entered for Isfan and against Longwood in the amount of $789,835.

¶ 22                     Supplementary Proceedings Against the Husmans

¶ 23        On January 14, 2011, Isfan filed a "Supplemental Proceedings Complaint" in which it sought to recover the judgment against Longwood from the Husmans, pursuant to section 2-1402 of the Code of Civil Procedure (735 ILCS 5/2-1402 (West 2010)), which governs supplementary proceedings by judgment creditors.[1] This is the first time that any of the Husmans were named as parties in connection with the judgment against Longwood.

¶ 24        In the supplementary complaint, Isfan alleged that all four of the Husmans were former members of Longwood. (As noted above, this is incorrect; David was never a member of Longwood, although the other three Husmans were.) Although members of limited liability companies cannot be held liable for company debts merely by virtue of their status as members

_____

[1] As noted, at the time these supplementary proceedings were initiated, the judgment was not yet final, since count V against Rogulski was still pending (a fact which was apparently overlooked by both Isfan and the trial court). Thus, the supplementary proceedings were premature. Ill. S. Ct. R. 277(a) (eff. July 1, 1982); see also *Tobias v. Lake Forest Partners, LLC*, 402 Ill. App. 3d 484, 488 (2010) ("section 2-1402 supplementary proceedings are not available to a creditor until after an enforceable judgment has been entered"). But we need not further discuss the impact of this error, since we are vacating the default judgment upon which these proceedings were premised.

(805 ILCS 180/10-10 (West 2010)), Isfan asserted that the Husmans were liable because they received "unlawful distributions" from Longwood during the time that Longwood owed money to Isfan.

¶ 25    More specifically, Isfan alleged that David controlled Longwood's funds and promised Isfan that it would be paid before any funds were distributed to Longwood's members. By this alleged promise, David induced Isfan to keep working. But contrary to his promise, in 2002 through 2005, Isfan claimed that David made "distributions" to himself and the other three Husmans. According to Isfan, these distributions were unlawful because creditors, such as Isfan, are entitled to be paid before distributions are made to members. See 805 ILCS 180/25-30(a) (West 2010) ("A distribution may not be made if *** the limited liability company would not be able to pay its debts as they become due in the ordinary course of business ***.").

¶ 26    Isfan sought relief in four counts. Count I asserted that David was required to disgorge the wrongful distributions he had received from 2002 through 2005. Count II asserted the same claim against Michael, Melinda, and Lori. Count III was against David and asserted that he was guilty of fraud. And count IV asserted claims of "embezzlement" against all of the Husmans.

¶ 27    Over the course of the supplementary proceedings, the Husmans contested the claims asserted against them as well as the validity of the default judgment against Longwood. On March 1, 2011, they filed a motion to dismiss an amended supplementary complaint, arguing that it failed to state valid claims and was barred by the two-year statute of limitations for unlawful distributions (805 ILCS 180/25-35(d) (West 2010)). The trial court found that counts pertaining to distributions received by David were time-barred, since David was the only one alleged to have known that the distributions were unlawful (and therefore the only one to whom the

unlawful-distribution statute of limitations applied).[2] It dismissed those claims but left the remainder intact.

¶ 28     The Husmans also filed answers in which they asserted what they labeled affirmative defenses but which actually constituted denials of certain of the allegations in Isfan's complaint. See *Vroegh v. J&M Forklift*, 165 Ill. 2d 523, 530 (1995) (affirmative defense admits the allegations of the complaint but raises affirmative matter that defeats the claim); *Leyshon v. Diehl Controls North America, Inc.*, 407 Ill. App. 3d 1, 9 (2010) (same). In particular, the Husmans asserted that the funds they received from Longwood were not distributions, but repayment of loans. In 1997, David loaned $1,200,000 to Longwood to provide funds for the condominium development project, as evidenced by a promissory note and security agreement signed by the parties. Over the next two years, David loaned an additional $390,000 to the LLC. David claimed he made these loans "for the benefit of" Michael, Melinda, and Lori. Longwood repaid portions of these loans to the Husmans in 2002 through 2005, although approximately $500,000 remained unpaid at the time the Husmans filed their answers.

¶ 29     The Husmans then filed a second motion to dismiss the remaining claims in the supplementary complaint, arguing, among other things, that the default judgment against Longwood was unenforceable and should be vacated under section 2-1301(e) of the Code of Civil Procedure (735 ILCS 5/2-1301(e) (West 2012)). After briefing on that motion, the trial

---

[2] We do not see any statutory basis for the trial court's conclusion that the supposedly "innocent" members of Longwood could not avail themselves of the two-year statute of limitations for wrongful distributions. Nor would it make any sense for intentional violations of section 25-30 to receive greater statutory protection than unintentional ones. In the same vein, we note that Isfan asserted an essentially identical claim against Kaplan in a separate lawsuit – *i.e.*, that Longwood assets were improperly distributed to Kaplan in violation of Isfan's rights as creditor – and that claim was dismissed as time-barred in its entirety. Again, we note but do not resolve this issue, given our conclusion that the underlying judgment against Longwood must be vacated.

court, per Judge White, issued a January 21, 2014 order stating: "This Court suggests the Husman defendants submit a motion to vacate before Judge Elrod the order of April 28, 2009 ***. This court makes no determination of the merits of a motion to vacate." The court also stayed the supplementary proceedings to allow the Husmans to pursue that motion.

¶ 30    On February 19, 2014, the Husmans filed a section 2-1301(e) motion to vacate the default against Longwood. The Husmans invoked section 2-1301 because at the time the motion was filed, the legal malpractice claim against Rogulski was still pending and, therefore, no final order had been entered. The motion argued that the default judgment did not comport with substantial justice and should be vacated because (1) the orders of default were entered without proper notice and (2) the third amended complaint did not state valid claims against Longwood. The Husmans claimed that the resulting prejudice was particularly severe since Michael, Melinda, and Lori were merely "passive investors and members" in Longwood without any duties or control over the company's finances, while David was not even a member.

¶ 31    The trial court, per Judge Lawrence, who had taken over the case following Judge Elrod's death, denied the Husmans' motion to vacate the default on August 26, 2014. The court found that the Husmans, as the surviving members of a dissolved limited liability company, had standing to seek to vacate the judgment against Longwood and that "Isfan clearly failed to send proper notice of the motions for default and prove-up," since service should have been sent to the Secretary of State. See 805 ILCS 5/5.25(b)(2) (West 2012) (service must be made upon the Secretary of State "[w]henever the corporation's registered agent cannot with reasonable diligence be found at the registered office in this State"). Nevertheless, the trial court ruled that the Husmans had waived their right to vacate the default, since they had participated in the citation proceedings for almost five years without raising the issue of improper notice of default.

In that same order, the trial court dismissed count V of the third amended complaint (the malpractice claim against Rogulski) for want of prosecution. The Husmans timely appealed from the final order.

¶ 32                                   ANALYSIS

¶ 33       On appeal, the Husmans raise three arguments: (1) the default judgment against Longwood is void for lack of personal jurisdiction, since Longwood was not properly served with the complaint; (2) alternatively, the default judgment against Longwood should be vacated in the interests of substantial justice under section 2-1301(e) (735 ILCS 5/2-1301(e) (West 2012)), given the inadequate notice of Isfan's motion for default; and (3) Isfan's third amended complaint failed to state a cause of action against Longwood and was therefore legally insufficient to support a default judgment.

¶ 34                        Personal Jurisdiction Over Longwood

¶ 35       The Husmans' first argument is that service of the complaint on Kaplan, Longwood's former registered agent, was ineffective to vest the court with personal jurisdiction over Longwood. The Husmans are raising this issue for the first time on appeal; their service-related arguments before the trial court pertained solely to service of the notice of default, not service of the complaint. While we certainly do not condone the Husmans' delay in raising this issue, a judgment obtained without personal jurisdiction is void *ab initio* and may be attacked at any time. *In re Dar. C.*, 2011 IL 111083, ¶ 60.

¶ 36       The Husmans contend that service on a defunct company must be made through the Secretary of State, pursuant to the Limited Liability Company Act (Act) (805 ILCS 180/1-1 *et seq.* (West 2012)). Isfan argues that Kaplan's status as registered agent continued beyond the dissolution of the company, so service on Kaplan was proper. Alternatively, Isfan argues that the

Husmans waived any objection to personal jurisdiction over Longwood by participating in the supplementary proceedings. We disagree with Isfan on both points and find that the default judgment against Longwood is void for lack of personal jurisdiction.

¶ 37    If a defendant is not properly served with summons, the court lacks personal jurisdiction over the defendant and any judgment against that party is void. *Mugavero v. Kenzler*, 317 Ill. App. 3d 162, 164 (2000) (vacating default judgment where defendant was never properly served); *J.C. Penney Co. v. West*, 114 Ill. App. 3d 644, 646 (1983) (stating that "service of summons upon a defendant is essential to create personal jurisdiction of the court").

¶ 38    Service on a limited liability company is governed by section 1-50 of the Act, which at all relevant times provided as follows:

> "(a) Any process, notice, or demand required or permitted by law to be served upon either a limited liability company or foreign limited liability company shall be served either upon the registered agent appointed by the limited liability company or upon the Secretary of State as provided in this Section.

> (b) The Secretary of State shall be irrevocably appointed as an agent of a limited liability company upon whom any process, notice, or demand may be served under any of the following circumstances:

>> (1) Whenever the limited liability company shall fail to appoint or maintain a registered agent in this State.

>> (2) Whenever the limited liability company's registered agent cannot, by registered or certified mail, be found at the registered office in this State or at the principal place of business stated in the articles of organization." 805 ILCS 180/1-50 (West 2012).

When any of the conditions of subsection (b) are present, a plaintiff is required to serve process upon the Secretary of State, and it must also serve copies at the company's last registered office as well as the address that the plaintiff believes is most likely to result in actual notice. 805 ILCS 180/1-50(c) (West 2012).

¶ 39　　By the time Isfan filed the 2006 lawsuit, Longwood had been dissolved for more than a year. It is undisputed that Isfan never served or attempted to serve the Secretary of State with the 2006 complaint. Further, Isfan purported to serve Kaplan in his capacity as Longwood's registered agent at an address that had never been listed with the Secretary of State. Isfan asserts that Kaplan still counted as Longwood's registered agent, such that service on him was sufficient to confer jurisdiction. But Isfan provides no legal support for this conclusion; it merely states, without elaboration, that it would be "impracticable" if registered agent status did not continue past a company's dissolution. Isfan's failure to cite any authority to support this proposition renders it forfeited. Ill. S. Ct. R. 341(h)(7) (eff. Feb. 6, 2013); see *People v. Ward*, 215 Ill. 2d 317, 332 (2005) ("point raised in a brief but not supported by citation to relevant authority *** is therefore forfeited").

¶ 40　　Further, notwithstanding the forfeiture of this issue, nothing in the Act indicates that a registered agent of a limited liability company retains authority after dissolution. See 805 ILCS 180/35-3 (West 2012) ("a limited liability company continues after dissolution only for the purpose of winding up its business"). In this regard, limited liability companies are different from corporations. The Business Corporation Act of 1983 explicitly provides that, for five years after a corporation is dissolved, the registered agent remains an agent of the corporation upon whom process can be served. 805 ILCS 5/5.05 (West 2012). There is no parallel provision in the Act, although the legislature could certainly have added such a provision if it chose. On the

contrary, section 1-50 of the Act was amended in 2013 to explicitly clarify that service on a dissolved limited liability company should be made upon the Secretary of State. Pub. Act 98-171, §15 (eff. Aug. 5, 2013) amending 805 ILCS 180/1-50(b)(3) (West 2012). Accordingly, service upon Kaplan, more than a year after Longwood was dissolved, was insufficient to vest the court with personal jurisdiction over Longwood.

¶ 41    Isfan next argues that the Husmans waived any objections to the court's personal jurisdiction over Longwood by their participation in the supplementary proceedings. We disagree for two reasons. First, the Husmans appeared in the supplementary proceedings in their individual capacities, not on behalf of Longwood, and they are not asserting that the trial court lacked jurisdiction over them, but that it lacked jurisdiction over an entity with which they were formerly affiliated. The only thing that the Husmans arguably did on Longwood's behalf was to seek to vacate the default, as they had standing to do. *Hurlbert v. Brewer*, 386 Ill. App. 3d 1096, 1102 (2008) (nonparties may seek to vacate default judgment if they have been injured by the judgment and will derive a benefit from its reversal). Thus, the Husmans' participation in the supplementary proceedings could not waive defective service on another party in a different proceeding and on whose behalf they did not appear.

¶ 42    Second, and more importantly, our supreme court recently reaffirmed that " 'a party who submits to the court's jurisdiction does so only prospectively and the appearance does not retroactively validate orders entered prior to that date.' " *BAC Home Loans Servicing, LP v. Mitchell*, 2014 IL 116311, ¶ 43 (quoting *In re Marriage of Verdung*, 126 Ill. 2d 542, 547 (1989)); see also *Mortgage Electronic Systems v. Gipson*, 379 Ill. App. 3d 622, 630 (2008) (a general appearance does not retroactively validate a judgment that was void when it was entered); *J.C. Penney*, 114 Ill. App. 3d at 646 (same). The only contrary authority cited by Isfan,

*Bradshaw v. Pellican*, 152 Ill. App. 3d 253, 256 (1987), predates *Verdung* and *BAC Home Loans* and was effectively overruled by those cases. Therefore, even if the Husmans' participation in the supplementary proceedings somehow had the effect of prospectively waiving Longwood's objection to personal jurisdiction, that waiver could not validate the default that was entered years before the supplementary proceedings began.

¶ 43    The trial court never obtained personal jurisdiction over Longwood, nor could the Husmans have waived any objections to personal jurisdiction by appearing in supplementary proceedings years after the fact. Consequently, the trial court erred in refusing to vacate the default judgment against Longwood.

¶ 44                                  Substantial Justice

¶ 45    As an alternative ground for reversing the judgment below, we also find that the default judgment against Longwood should have been vacated in the interests of substantial justice.

¶ 46    The Husmans' motion to vacate was brought under section 2-1301(e) of the Code of Civil Procedure, which provides that "[t]he court may in its discretion, before final order or judgment, set aside any default." 735 ILCS 5/2-1301(e) (West 2012). When exercising its discretion, the court must be mindful that a default judgment is a "drastic remedy that should be used only as a last resort." *In re Haley D.*, 2011 IL 110886, ¶ 69. Courts prefer that controversies be decided on their merits, and section 2-1301(e) is liberally construed toward that end. *Id.*; *Stotlar Drug Co. v. Marlow*, 239 Ill. App. 3d 726, 728 (1993). In deciding whether to grant a section 2-1301(e) motion to vacate, "the overriding consideration is simply whether or not substantial justice is being done between the litigants and whether it is reasonable, under the circumstances, to compel the other party to go to trial on the merits." *Haley D.*, 2011 IL 110886, ¶ 57. The movant is not required to show the existence of a meritorious defense or a reasonable excuse for

not having timely asserted such a defense. *Id.*; see *Heller Financial, Inc. v. Christopher La Salle & Co.*, 168 Ill. App. 3d 852, 854 (1988) (despite lack of diligence by defendant, substantial justice required that default be vacated). But the court may take such factors into consideration in determining whether the totality of circumstances justifies setting aside the default. *Havana National Bank v. Satorius-Curry, Inc.*, 167 Ill. App. 3d 562, 565 (1988).

¶ 47    In this case, it is clear that Isfan never sent proper notice of the default to Longwood, and thus setting aside the default comports with substantial justice. As noted, under section 1-50 of the Act, Isfan was required to send notice to the Secretary of State, which it never attempted to do. Instead, it sent notice solely to Marina, Kaplan's widow, at her home address. Isfan argues that this constituted "reasonable notice," and, similarly, the trial court found that service on Marina was "most likely to provide actual notice." We fail to see how this is so. Marina was not a member or manager of Longwood, nor is there any evidence that she was involved in any of Longwood's operations. She had no reason to attempt to safeguard the interests of a company that had dissolved years ago and that she played no role in. Further, Isfan's complaint asserted claims not only against Longwood, but against Kaplan individually as well. Marina's focus after her husband's death would have been the claim against her husband in his individual capacity. Since no one (not even Kaplan) appeared on Longwood's behalf in the 2006 lawsuit, Marina had no reason to do anything in response to Isfan's motion to default Longwood.

¶ 48    It is also worth noting that, at the time when Isfan sent the notice of default to Marina, she had not yet involved herself in the case in any capacity. On the contrary, Kaplan's former counsel had withdrawn from the case, citing Marina's lack of cooperation. Isfan's repeated attempts to serve Marina with the third amended complaint at her residence (the same address to which the notice of default was sent) were unsuccessful. Isfan was not able to serve Marina until

three months after the default judgment was entered, and she did not appear in court with new counsel until an additional month had passed. Consequently, the notice of Isfan's motion for default sent to Marina at her home address was the functional equivalent of no notice at all to Longwood.

¶ 49     Thus, it is apparent that Isfan failed to provide statutory notice that it was seeking default judgment against Longwood, and it also failed to take actions likely to provide actual notice. In fact, there is no indication that any of the surviving members of Longwood had actual notice of the default before its entry. Under these circumstances, substantial justice requires that the default be vacated. *Buffington v. Yungen*, 322 Ill. App. 3d 152, 155 (2001) (trial court abused its discretion by denying motion to vacate a default that was entered without proper notice to defendants). This rule is based on the due process principle that a defendant should have its day in court before being subjected to an adverse judgment. "The fundamental requirement of due process is the opportunity to be heard, and that right 'has little reality or worth unless one is informed that the matter is pending.' " *BAC Home Loans*, 2014 IL 116311, ¶ 28 (quoting *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)); see also *Buffington*, 322 Ill. App. 3d at 155 ("Defendants had a right to make their defense, and common justice dictates that in order to enjoy that right they must first be notified.").

¶ 50     Notwithstanding the due process considerations at stake, the trial court found that substantial justice did not favor vacating the default because doing so would "allow the Husmans to enrich themselves at the expense of a creditor." This conclusion was plainly premature. Isfan has never proven any of its allegations; the record does not contain any testimony from Isfan's agents or any documentation that would substantiate the amounts claimed as due. Also absent from the record is Longwood's operating agreement or any information regarding the reasons for

the payments by Longwood to its members. Notably, the Husmans assert that the alleged "unlawful distributions" were actually repayments of loans that David made to Longwood from 1997 to 1999. They also argue that Isfan's contract was not with Longwood, but with Kaplan. Since Isfan had no privity of contract with Longwood, and since Isfan released its mechanic's lien against Longwood in 2005, the Husmans argue that Isfan never had a valid claim against Longwood. The Husmans also raised the timeliness of Isfan's claims, an issue that was resolved against them in the supplementary proceedings, but that is not presently before us. We express no opinion on the merits of these arguments, but it has yet to be determined whether Isfan is entitled to a judgment first, against Longwood, and second, if so, whether that judgment can be enforced against the Husmans.

¶ 51    Isfan raises two further arguments in favor of upholding the default. First, Isfan argues that the Husmans unnecessarily delayed filing their motion to vacate. Although Isfan initiated supplementary proceedings against the Husmans on January 14, 2011, the Husmans did not move to vacate the default until February 19, 2014. Isfan argues that this lack of due diligence is sufficient grounds to deny the Husmans' motion to vacate. But as noted above, a section 2-1301(e) movant is not required to show due diligence, and although the court may take a lack of due diligence into account, we find that it does not outweigh the injustice that would result from denying Longwood its day in court.

¶ 52    Isfan additionally argues that it will be unduly prejudiced if it is required to prove its case against Longwood more than 12 years after construction was completed. But it is not apparent that Isfan is any worse off now in terms of its ability to prove its claims than it was when the default judgment was entered. As we have noted, no evidence supporting the amount claimed by Isfan appears in the record. And while we are not unsympathetic to Isfan's concern, the

Husmans will suffer even greater prejudice if they are called upon to pay a default judgment which was never properly noticed and for which we can discern no support in the record.

¶ 53                                             CONCLUSION

¶ 54        Since Longwood was never properly served with the complaint, the default judgment was void for lack of personal jurisdiction.  Additionally, because Isfan failed to send proper notice of its motion for default, the interests of substantial justice likewise militate in favor of vacating the default.  Accordingly, we reverse the trial court's denial of the Husmans' section 2-1301(e) motion to vacate the default judgment against Longwood.  Because of our resolution of these issues, we need not consider the Husmans' claims regarding the legal sufficiency of the third amended complaint, and that issue may be addressed on remand.

¶ 55        Reversed and remanded.