2021 IL App (1st) 200157-U

FIRST DISTRICT,
FIRST DIVISION
August 30, 2021

Nos. 1-20-0157 & 1-20-0158, cons.

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | |
|---|---|
| THE BANK OF NEW YORK MELLON CORPORATION F/K/A THE BANK OF NEW YORK, AS TRUSTEE FOR THE BENEFIT OF ALTERNATIVE LOAN TRUST 2007-7T2, MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2006-45T1, <br><br> Plaintiff-Appellee, <br><br> v. <br><br> FARHAT AKHTER a/k/a FARAT AKHTAR, IQBAL AKHTER, MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., PARK'S PLUMBING & SEWER, UNKNOWN OWNERS AND NON-RECORD CLAIMANTS, <br><br> Defendants <br><br> (Farhat Akhter a/k/a Farat Akhtar and Iqbal Akhter, <br><br> Defendants-Appellants). | Appeal from the Circuit Court of Cook County, Illinois. <br><br> No. 19 CH 15555 <br><br> Honorable John J. Curry, Judge Presiding. |

JUSTICE COGHLAN delivered the judgment of the court.
Presiding Justice Walker and Justice Pierce concurred in the judgment.

**ORDER**

¶ 1    *Held*:  In foreclosure action, defendant homeowners appealed judgment confirming judicial sale of the property. We hold that (1) we lack jurisdiction to consider defendants' untimely challenge to the granting of plaintiff's section 2-1401 petition; (2) the trial court acted within its discretion by granting leave for plaintiff to file a third amended complaint; and (3) reformation of the mortgage to conform to the parties' intent was proper.

¶ 2    This is a mortgage foreclosure action brought by the Bank of New York Mellon (the Bank) against defendants Iqbal Akhter and Farhat Akhter, husband and wife.

¶ 3    On February 15, 2007, Iqbal conveyed the family home to Farhat via quitclaim deed, but also included in the conveyance 40 additional feet of property that he did not own. On the same date, Farhat borrowed $1,240,000 from the Bank's predecessor, purportedly mortgaging said property as security for the loan. When Farhat stopped making payments, the Bank brought the present foreclosure action in 2009.

¶ 4    In 2018, after extensive litigation as to what property was subject to the mortgage, the trial court granted summary judgment to the Bank and also entered an order reforming the mortgage to encumber only the Akhter family home. The court later entered an order confirming the judicial sale of the property, from which defendants now appeal. For the reasons that follow, we affirm the judgment of the trial court.

¶ 5                                    BACKGROUND

¶ 6    In 2005, Iqbal purchased a single-family home at 6400 North Longmeadow Avenue in Lincolnwood, Illinois (the Longmeadow Property). The proper legal description of the property is as follows:

"*Lot 5 (except the northeasterly 40.0 feet of said tract)* in the Lincoln Towers Eighth Addition Subdivision the northwesterly 1/2 of Lot 21 (except the northwesterly 161.50 feet thereof) in Bronson's part of Caldwells Reserve in Township 40 and Township 41, Range 13 east of the principal meridian, (except therefrom the northeast 33 feet and the

southeast 33 feet thereof) and (except therefrom that part lying south of a line 50 feet north of the center line of Devon Avenue), in Cook County, Illinois." (Emphasis added.) The record also alternatively describes the Longmeadow Property as "Lots 3, 4 and 5 taken as a tract (except the northeasterly 240.0 feet of said tract)." As shown by an October 12, 2015 plat of survey, this is an equivalent description. Despite the mention of Lots 3 and 4 in the alternative description, no part of the Longmeadow Property extends onto Lots 3 and 4; it is situated entirely on Lot 5, minus the northeast 40 feet of that lot.

¶ 7    On February 15, 2007, Iqbal executed a quitclaim deed purporting to convey the entirety of Lot 5 to Farhat, including the northeast 40 feet of the lot which he did not own. We shall refer to the legal description in the quitclaim deed as the "incorrect legal description."

¶ 8    On the same date, Farhat executed a mortgage with the Bank's predecessor, Countrywide Home Loans. In exchange for a loan of $1,240,000, the mortgage purported to place a lien on "Lot 5" (*i.e.*, the entire lot, including the northeast 40 feet), although it also stated "FOR INFORMATION PURPOSES ONLY" that the subject land was commonly known as 6400 North Longmeadow Avenue.

¶ 9    On May 15, 2007, the lender's title company (Acquest Title Services, LLC) caused to have re-recorded both Iqbal's quitclaim deed to Farhat and the mortgage deed. The re-recorded deeds strike the incorrect legal description (referencing the entirety of Lot 5) from the instrument and attach the correct description (excluding the northeast 40 feet of Lot 5) with a handwritten note stating, "This document is being re-recorded to correct legal description." These changes were made without defendants' knowledge, and neither defendant signed the re-recorded deeds.

¶ 10    Farhat made no payments on the mortgage after June 2008. On April 3, 2009, the Bank filed a complaint seeking to foreclose on the Longmeadow Property, giving the proper legal

description of that property based on the re-recorded mortgage deed, and alleging that Farhat owed $1,225,472.74 in principal, plus interest, attorney fees, and other expenses.[1]

¶ 11        On November 6, 2009, the Bank amended its complaint to add a count for reformation, requesting that the court reform the mortgage to reflect the *incorrect* description, which it claimed was correct. Defendants appeared through counsel and filed an answer on June 9, 2011, raising only a standing defense that is not at issue in this appeal.

¶ 12        On October 29, 2014, on the Bank's motion, the trial court entered summary judgment in favor of the Bank on all counts. It also entered (1) an order of reformation changing the mortgage to reflect the incorrect description of the Longmeadow Property by adding 40 feet, (2) a Rule 304(a) finding that there was no just reason to delay enforcement or appeal of the reformation order, (3) a judgment of foreclosure and sale for the Longmeadow Property including the 40 feet (the incorrect legal description), and (4) an order appointing a selling officer for the property.

¶ 13        More than a year later, on February 19, 2016, the Bank filed a section 2-1401 (735 ILCS 5/2-1401 (West 2014)) petition to vacate the order of reformation because it discovered that the reformed property description was incorrect. It requested leave to amend its complaint to reflect the correct legal description excluding the northeast 40 feet of the lot. The trial court granted the Bank's petition on April 29, 2016, and the Bank subsequently filed a second amended complaint seeking to foreclose on the Longmeadow Property under its proper legal description.

¶ 14        Defendants moved to strike the second amended complaint under section 2-615 of the Code of Civil Procedure (735 ILCS 5/2-615 (West 2014)), arguing that the Bank could not state a cause of action for foreclosure without first obtaining a judicial reformation of the mortgage to

---

[1] The complaint also named as defendants Mortgage Electronic Registration Systems, Inc. ("MERS") and Parks Plumbing & Sewer, Inc., neither of whom are parties to this appeal. MERS was named for a junior mortgage lien interest, never appeared, and was defaulted. Parks was named as a lienholder of record and was later dismissed.

reflect the correct legal description of the property. Defendants further argued that the Bank could not rely on the re-recorded mortgage and re-recorded quitclaim deed, both of which were invalid since they had been unilaterally altered without defendants' knowledge or consent.

¶ 15 In response, the Bank moved for leave to file a third amended complaint to address defendants' concerns by adding a count for reformation. The trial court granted the Bank's motion, and on December 15, 2016, the Bank filed its third amended complaint. In count I, the Bank requested the court reform the mortgage to reflect the correct legal description of the property. In count II, the Bank sought to foreclose on the Longmeadow Property based on the reformed mortgage.

¶ 16 On August 28, 2018, the trial court entered summary judgment in the Bank's favor and a judgment of foreclosure and sale, and it appointed a selling officer for the property. The court also entered an order of reformation changing the legal description in the mortgage to the proper legal description (*i.e.*, excluding the northeasterly 40 feet of Lot 5) and voiding the re-recorded mortgage and re-recorded quitclaim deed.

¶ 17 Defendants filed a motion to reconsider on March 18, 2019, attaching in support Farhat's affidavit. In the affidavit, Farhat alleged that in February 2007, a representative of Countrywide Home Loans (the Bank's predecessor) visited her home, requesting that she sign "loan document papers as a loan against the property located at 6400 N. Longmeadow Avenue, Lincolnwood, Illinois 60712." When Farhat said she did not own that property, the representative asserted that Iqbal had conveyed it to her via quitclaim deed. Farhat admitted signing "certain documents" but alleged that she never signed the mortgage or the quitclaim deed.

¶ 18       The trial court denied defendants' motion to reconsider on April 8, 2019. A judicial sale

of the Longmeadow Property was conducted on May 21, 2019, and on October 9, 2019, the trial

court entered an order approving the sale. Defendants now appeal.[2]

¶ 19                                           ANALYSIS

¶ 20       On appeal, defendants argue that the trial court erred (1) in granting the Bank's section 2-

1401 petition to vacate; (2) in granting the Bank's motion to file its third amended complaint;

and (3) in entering an order of reformation without holding an evidentiary hearing to determine

the parties' intent.

¶ 21                          The Bank's Section 2-1401 Petition to Vacate

¶ 22       Defendants challenge the trial court's April 29, 2016 order granting the Bank's section 2-

1401 petition to vacate the court's first order of reformation. However, defendants' appeal from

that order is untimely. Under Supreme Court Rule 304(b)(3) (Ill. S. Ct. R. 304(b)(3) (eff. Mar. 8,

2016)), an order granting a section 2-1401 petition is immediately appealable. "When Rule

304(b) makes an order immediately appealable, that appeal is not elective—any claim of error is

lost if not raised then." *Washington Mutual Bank, F.A. v. Archer Bank*, 385 Ill. App. 3d 427, 430

(2008). After the trial court granted the Bank's section 2-1401 petition, defendants had 30 days

in which to appeal that order. Ill. S. Ct. R. 303(a)(1) (eff. Jan. 1, 2015). Because defendants did

not file their appeal until more than three years later on January 22, 2020, we lack jurisdiction to

review the trial court's April 29, 2016 order. *Secura Insurance Co. v. Illinois Farmers Insurance

Co.*, 232 Ill. 2d 209, 217-18 (2009) (timely filing of an appeal is jurisdictional and mandatory,

---

[2] Defendants filed two notices of appeal on January 22, 2020. The first was filed by Farhat *pro se* under case number 1-20-0157. The second was filed by defendants through counsel under case number 1-20-0158. These appeals have been consolidated.

and "the appellate court does not have the authority to excuse the filing requirements of the supreme court rules governing appeals").

¶ 23                    The Bank's Third Amended Complaint

¶ 24     Defendants next argue that the trial court erred by granting the Bank leave to file its third amended complaint. We disagree.

¶ 25     The trial court has broad discretion to allow amendments to pleadings at any time before final judgment on reasonable and just terms. 735 ILCS 5/2-616 (West 2014)); *Hayes Mechanical, Inc. v. First Industrial, L.P.*, 351 Ill. App. 3d 1, 7 (2004). In determining whether the trial court abused its discretion, we consider:

> "(1) whether the proposed amendment would cure the defective pleading; (2) whether other parties would sustain prejudice or surprise by virtue of the proposed amendment; (3) whether the proposed amendment is timely; and (4) whether previous opportunities to amend the pleading could be identified." *Loyola Academy v. S & S Roof Maintenance, Inc.*, 146 Ill. 2d 263, 273 (1992).

¶ 26     We find no abuse of discretion here. As defendants acknowledge, the Bank's second amended complaint was defective because the legal description in the mortgage did not match the legal description of the property upon which the Bank sought to foreclose. The third amended complaint cured that defect by adding a count for reformation of the mortgage. This amendment did not prejudice or surprise defendants, who knew from the start of the litigation that the Bank sought to foreclose upon the Longmeadow Property.

¶ 27     The proposed amendment was also timely, since the action was still in the pleading stage; when the Bank sought leave to amend, defendants had not yet answered the second amended

complaint. See *id.* at 275 (proposed amendment was timely filed, even though it came after grant of summary judgment, where plaintiff filed its intent to amend within the pleading stage).

¶ 28        Defendants argue that the Bank had prior opportunities to amend, since the inconsistency between the legal description in the quitclaim deed and the proper legal description of the Longmeadow Property was a matter of public record. We do not find this dispositive in light of the lack of prejudice to defendants. *Lee v. Chicago Transit Authority*, 152 Ill. 2d 432, 469 (1992) (as long as defendant is not prejudiced, trial court may permit amendment of pleading even where plaintiff had prior opportunities to amend). Thus, the trial court did not abuse its broad discretion in permitting the Bank to file its third amended complaint.

¶ 29                                    Reformation

¶ 30        Finally, defendants argue that the trial court erred in reforming the mortgage without holding an evidentiary hearing to determine the parties' intent.

¶ 31        Initially, the parties dispute the effect of Iqbal's 2007 quitclaim deed. Defendants argue that because Iqbal did not own all of Lot 5, the quitclaim deed was invalid and conferred no property interest upon Farhat. We disagree. "[I]t is elementary property law that a quitclaim deed will convey whatever title or interest the grantor may have in the land at the time it is given, and only such title and interest." *Cree Development Corp. v. Mid-America Advertising Co.*, 294 Ill. App. 3d 324, 332 (1997) ("Cree Development purchased only what Harriet Goodall owned at the time that she transferred the property by quitclaim deed to Cree Development"); see also *In re Marriage of Didier*, 318 Ill. App. 3d 253, 261 (2000) (where petitioner's father held title to a parcel of land but not the house on the land, his quitclaim deed purporting to transfer the lot "was only effective to transfer title to the land and not to the house"). Here, Iqbal held title to the

Longmeadow Property but not the northeast 40 feet of Lot 5. Thus, his quitclaim deed conveyed only the Longmeadow Property to Farhat.

¶ 32    The purpose of an action for reformation is to modify a written contract to conform to the parties' true intent. The plaintiff must prove by clear and convincing evidence that there was a meeting of the minds resulting in an actual agreement between the parties, but the written contract does not reflect that agreement, either through mutual mistake or through mistake by one party and fraud by the other. *Wheeler-Dealer, Ltd. v. Christ*, 379 Ill. App. 3d 864 (2008); see *Magnus v. Barrett*, 197 Ill. App. 3d 931, 935-36 (1990) (trial court erred by denying reformation of insurance contract where the parties "reached a common understanding regarding coverage, but then inaccurately reflected that understanding when reducing the agreement to writing"). We will not disturb the trial court's decision unless it is against the manifest weight of the evidence. *Wheeler-Dealer*, 379 Ill. App. 3d at 869.

¶ 33    Here, the trial court's finding that the parties intended to mortgage the Longmeadow Property (under its correct legal description) is not against the manifest weight of the evidence. According to Farhat's March 8, 2019 affidavit, it was the mutual understanding of the parties that the loan was "against the property located at 6400 N. Longmeadow Avenue." The mortgage itself states that the subject property is commonly known as 6400 North Longmeadow Avenue. Moreover, there is no evidence that either party intended to mortgage any additional property. Thus, it is apparent that the parties did, in fact, intend to mortgage the Longmeadow Property, but due to a mutual mistake, the written instrument included 40 additional feet of real estate that Farhat did not own. Under these facts, reformation of the mortgage was proper.

¶ 34    Defendants argue that the trial court should have *sua sponte* conducted an evidentiary hearing on the parties' intent. However, they cite no case holding that an evidentiary hearing is

needed before reformation can be granted. *Nosbaum v. Martini*, 312 Ill. App. 3d 108 (2000), on which they rely, is inapposite because it did not involve reformation of a contract. *Nosbaum* was a medical malpractice case in which we held that dismissal of plaintiff's complaint was improper because it sufficiently alleged liability under a theory of apparent agency. *Id.* at 122. We further stated that, on remand, an evidentiary hearing on the apparent agency issue would be appropriate. *Id.* at 123. *Nosbaum* has no relevance to the issue of contractual intent raised by the case at bar.

¶ 35        Finally, defendants argue that summary judgment is inappropriate because "[t]he Plaintiff cannot foreclose on a property which does not match the legal description in the mortgage document." But, as discussed, the trial court properly reformed the mortgage to reflect the proper description of the Longmeadow Property. Accordingly, defendants' argument in this regard lacks merit.

¶ 36                                CONCLUSION

¶ 37        For the foregoing reasons, we affirm the judgment of the trial court.

¶ 38        Affirmed.