2024 IL App (1st) 230287-U

No. 1-23-0287

Second Division
May 28, 2024

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

|  |  |  |
|---|---|---|
| AMANDA NADHIR, | ) | Appeal from the Circuit Court of Cook County. |
| Plaintiff-Appellant, | ) | |
| v. | ) | No. 21 CH 2205 |
| TRI-STATE RESTORE, LLC, | ) | |
| Defendant-Appellee. | ) | Honorable Thaddeus L. Wilson Judge, Presiding. |

JUSTICE COBBS delivered the judgment of the court.
Justices McBride and Ellis concurred in the judgment.

**ORDER**

¶ 1   *Held*: The circuit court did not abuse its discretion in granting defendant-appellee's petition to vacate a default judgment pursuant to section 2-1401 of the Code of Civil Procedure.

¶ 2   This case comes before us following the circuit court's grant of defendant-appellee's petition to vacate a default judgment pursuant to section 2-1401 of the Code of Civil Procedure (735 ILCS 5/2-1401 (West 2020)). On May 5, 2020, plaintiff, Amanda Nadhir, filed a three-count

verified complaint for breach of contract, negligence, and detinue in the circuit court of Cook County against defendant, Tristate Restore, LLC (Tristate).[1] The complaint alleged that, following a fire in plaintiff's condominium building, plaintiff suffered extensive water damage to her property. Plaintiff subsequently retained Tristate to remove her remaining property for storage at a safe location in order to further salvage any property or help her submit claims to her insurance provider. However, according to plaintiff, Tristate mislocated a substantial amount of her property and has since returned only a small percentage of her items.

¶ 3 Following service of the summons and complaint, Tristate retained an attorney and filed an appearance. However, in October 2021, Tristate's counsel withdrew from the case and Tristate was ordered to retain new representation by November 18, 2021. Tristate did not retain counsel and did not file a *pro se* appearance. About five months later, on April 25, 2022, plaintiff filed a motion for default judgment and asserted compensatory damages in the amount of $431,868.42, as well as $132,967.08 in attorney fees and $706 in costs. On May 9, 2022, the circuit court granted the motion.

¶ 4 On July 27, 2022, Tristate, by new counsel, filed an appearance and a section 2-1401 petition to vacate the May 9 default judgment, arguing therein that it had meritorious defenses and it had diligently filed the petition and followed the underlying proceedings. Tristate further contended that equitable circumstances required vacating the judgment due to plaintiff's failure to provide Tristate with notice of the ongoing proceedings, the motion for default judgment, and the entered order. Following briefing and oral argument, the circuit court granted the petition.

---

[1]There are multiple iterations of the spelling of Tristate's name throughout the case by both their own attorneys and opposing counsel. We have continued onward with "Tristate."

¶ 5       On appeal, plaintiff argues that the circuit court abused its discretion in vacating the default judgment because Tristate did not exercise due diligence in the underlying action and that there were no "extraordinary circumstances" that justified vacatur. For the following reasons, we affirm.

¶ 6                                 I. BACKGROUND

¶ 7                              A. Factual Background

¶ 8       The facts as stated herein are derived from the record, namely the verified complaint, its exhibits, the case filings, and the parties' briefing on the contested petition. We further note that the facts underlying the petition are fiercely contested.

¶ 9       Plaintiff is a resident of Chicago, Illinois, and owns a condominium unit located at 1133 S. Wabash Avenue. Tristate is a registered corporation principally doing business in Chicago. On July 4, 2020, a fire occurred at plaintiff's condominium building, which resulted in water damage to many units in the building, including plaintiff's. The condominium's homeowner association subsequently retained Tristate for "restoration, mitigation, content manipulation, and/or reconstruction services," and further urged other individual unit owners to hire the company for the same services. In reliance on this advice, plaintiff hired Tristate to restore her unit to its pre-loss condition through a "Restoration Agreement and Assignment of Insurance Proceeds" (the contract), which was signed by her on July 9, 2020.

¶ 10      Following the contract's signing, Tristate began work on plaintiff's unit, which included creating an estimate for the costs of restoration, which it estimated to be at $88,254.14. Tristate also removed the contents of plaintiff's home over the course of multiple days, and placed the items for storage at Tristate's warehouse. Plaintiff took time off from her job to assist with such efforts. During the process of removing her items, plaintiff observed that Tristate did not take written inventory of her belongings.

¶ 11     In November 2020, four months after the contract's signing, Tristate informed plaintiff that it could not locate all of her belongings. Tristate's managing partner, Richard Greenwood, promised to schedule a call with plaintiff from the company's warehouse to discuss the details of the situation. Tristate also requested that plaintiff provide the company with an inventory sheet of her belongings. Plaintiff asked the company to put this request in writing, which it did not do.

¶ 12     On November 12, 2020, plaintiff informed Tristate via e-mail that she was terminating the contract based on Tristate's failure to perform. Plaintiff further demanded that Tristate immediately return her remaining belongings and refund the $23,693.91 of which her insurance provider had already paid to Tristate. On November 18, 2020, a Tristate employee, Thomas Herbst, responded to plaintiff via text message, indicating that the company had "a lot to go through" and requested plaintiff to provide further information as to her belongings and her original estimate.

¶ 13     On November 24, 2020, Tristate provided plaintiff with a document purporting to serve as an inventory report for her locatable and salvageable property. According to plaintiff, the inventory sheet was inaccurate, and did not include a full accounting of property that had been removed from her unit. Tristate also told plaintiff that some of her items had gone "missing" and had possibly been stolen by a company employee, and that it had filed a police report to document the incident. Subsequently, plaintiff also filed a police report based on this information.

¶ 14     On December 1, 2020, plaintiff e-mailed Tristate and requested a written release from the contract, return of her remaining belongings, and to transfer any orders that Tristate had placed on plaintiff's behalf for materials, appliances, and work done on the unit. Plaintiff further indicated that Tristate had already been reimbursed for such purchases by her insurer.

¶ 15     On December 3, 2020, Tristate, through Richard Greenwood, responded to plaintiff's request for outstanding items via e-mail. Greenwood acknowledged the parties' joint interest to

resolve the matter, but indicated that there were a "few critical items" that needed resolution, including a review of the payments made by plaintiff's insurer to Tristate. With regard to plaintiff's outstanding items, Tristate reiterated its request for plaintiff to confirm inventory of certain items.

¶ 16    On December 8, 2020, plaintiff's insurer, Farmer's Insurance Company, sent communications to Tristate concerning the estimate and reports originally submitted by Tristate for work already completed. On December 9, 2020, counsel for plaintiff also e-mailed Tristate, seeking return of plaintiff's remaining personal property, as well as Tristate's release of plaintiff from the contract.

¶ 17    On December 15, 2020, Tristate responded to plaintiff's request through Adella Deacon of Sable Law Group, who indicated that she represented the company. Deacon stated that Tristate had submitted an invoice to plaintiff's insurer. Deacon further noted that plaintiff had failed to respond to Tristate's request to confirm the items she claimed to be missing. Further emails were exchanged between the parties concerning these subjects throughout December 2021.

¶ 18    On January 12, 2021, plaintiff's insurer sent Tristate a "revised mitigation estimate." It further indicated that Tristate had been overpaid for plaintiff's claim. On January 27, 2021, plaintiff's counsel emailed Tristate, also indicating that its insurer believed that Tristate had "already received more in payments than it [was] entitled to receive and that no further payments [were] warranted." Plaintiff's counsel sent another e-mail to that effect on February 1, 2021. On February 2, 2021, Tristate, through Deacon, responded to plaintiff's counsel via e-mail, and asserted that plaintiff's insurer's assessment of the claim was "incomplete and not consistent with the services provided," and thus sought to further supplement the claim with more documentation.

¶ 19    Throughout February of 2021, plaintiff's counsel sent multiple e-mails to Tristate's counsel seeking return of plaintiff's remaining items. Notably, in e-mails exchanged in early February,

plaintiff's counsel and Tristate's counsel discussed whether Tristate still believed that plaintiff's property had been stolen. Tristate's counsel was adamant that it could not verify any inventory without plaintiff's cooperation.

¶ 20    On April 5, 2021, Tristate delivered 35 boxes of plaintiff's belongings to her, which plaintiff later claimed were still wet, unclean, and of little value. Plaintiff also claimed that approximately over $200,000 worth of property was still missing, and that Tristate had also failed to return any of the water-damaged belongings.

¶ 21                                B. Procedural History

¶ 22                    *1. Complaint and Tristate's First Attorney's Withdrawal*

¶ 23    On May 5, 2021, plaintiff filed her three-count verified complaint, which sought damages, attorney fees, costs, and interest.[2] Count I alleged breach of contract, count II alleged negligence, and count III alleged detinue for Tristate's continued wrongful possession of plaintiff's property and further sought the return and assembly of all remaining items. Plaintiff further alleged that her unit was still uninhabitable and that she was close to exhausting her insurance policy without having restored her home. Plaintiff estimated her damages to be "in excess of $200,000," but also alleged it to exceed $335,000 in other parts of the complaint. In support of her claims, plaintiff attached, among other exhibits, her contract with Tristate, which included at least one contact name for the company, specifically "Ryan Gibbons"; an address for the business and at least two company e-mail addresses; various inventory lists; and emails to Richard Greenwood.

---

[2]The matter was first assigned to Judge Allen Price Walker of the Chancery Division in the circuit court of Cook County. It was later transferred to Judge Thaddeus Wilson within the same division on January 31, 2022. No order of transfer appears in the record confirming this date; however, one of plaintiff's filings indicated that this was the date of transfer.

¶ 24    On June 21, 2021, an appearance was filed on behalf of Tristate. The attorney of record was listed as "Cara Lindo" of the Sable Law Group.[3] However, on September 3, 2021, Adella Deacon, also of the Sable Law Group, filed a motion to withdraw as counsel based on "irreconcilable differences." The motion indicated that Deacon had sent both electronic and written notice of its withdrawal to Tristate by certified mail to its last known address, and had specifically addressed the notice to Richard Greenwood, Tristate's managing partner.

¶ 25    On October 21, 2021, the circuit court entered a written order granting the motion to withdraw. Therein, the order stated that Deacon had provided proof of service of her motion, and that Tristate was to retain new counsel by November 18, 2021. The matter was set for status to December 9, 2021, over Zoom.[4]

¶ 26    On December 14, 2021, a status was held and the court entered a written order. The order did not indicate whether Tristate had appeared. However, the order stated that if Tristate did not retain new counsel by January 13, 2022, plaintiff was granted leave to file a motion for default judgment. The matter was continued to January 13 for status, and included instructions for the parties to appear over Zoom.[5]

¶ 27    On March 1, 2022, a status was held and the court entered a written order. Again, the order did not specify whether Tristate had appeared. The order stated that plaintiff was granted leave to file a motion for summary judgment by April 4, 2022. The order also expressly provided that the motion was to be served on Tristate via regular and certified mail. Finally, the order stated that the

---

[3]Subsequent filings in the matter articulated the date of appearance as June 18, 2021. However, the date of filing per the clerk's office was June 21, 2021.

[4]No such order from December 9, 2021, appears in the record.

[5]The record does not contain any written order for January 13, 2022.

case was continued to April 25, 2022, and again allowed for the parties to appear either in-person or over Zoom.

¶ 28    On April 5, 2022, plaintiff filed a "motion to set a hearing." Therein, the plaintiff stated that at the previous March 1 court date, plaintiff's counsel had mistakenly informed the court that Tristate had filed an answer to the complaint, but that upon further review, it had not. Plaintiff's counsel indicated that a motion for default judgment was now appropriate, and thus filed a motion to re-set a status based on the instructions of "Judge Wilson's clerk" to determine "next steps."

¶ 29    On April 11, 2022, the court entered a written order. There was again no indication as to whether Tristate attended the proceeding. Therein, the order stated that Tristate had been "personally served and [had] filed an appearance, but [had] not answered" the complaint. It further stated that Tristate had "not hired new counsel, despite having six months to do so[.]" As such, plaintiff was given leave to file a motion for default judgment by April 25, 2022, with a hearing to be held on May 9, 2022. Notably, in contrast to the order detailing the potential filing of a motion for summary judgment, the April 11 order did not contain an express directive that the motion for default judgment also be served upon Tristate via regular or certified mail.

¶ 30                    *2. Motion for Default Judgment*

¶ 31    On April 25, 2022, plaintiff filed a motion for default judgment against Tristate pursuant to section 2-1301(d) of the Code of Civil Procedure (735 ILCS 5/2-1301(d) (West 2020)).[6] Therein, plaintiff asserted that Tristate's last attorney had withdrawn from the case in October

---

[6]On April 22, 2022, plaintiff also filed a "certificate in support of a motion for default," which further contained an affidavit from plaintiff's counsel. Therein, plaintiff's counsel averred that plaintiff had suffered approximately $432,574.42 in compensatory damages and costs, and further sought attorney fees of about $25,000 in total. The filing attached an inventory sheet which purported to outline the items and costs of all damaged items. The motion for default judgment indicated that the affidavit had been "attached" to the motion, though it appears separately in the common law record.

2021 pursuant to Illinois Supreme Court Rule 13(c) (eff. Jan. 1, 2023), and had provided notice by mailing her motion to withdraw to the company. Plaintiff stated that the motion had been received by Tristate on September 22, 2021, and receipt was further confirmed by Richard Greenwood over e-mail to Deacon on October 20, 2021. Plaintiff asserted that Tristate had thereafter "violated two court orders requiring" it to obtain new counsel, failed to appear at the last three status hearings, had not communicated with opposing counsel, and failed to file an appearance or a responsive pleading in the case for over 10 months.

¶ 32                                      3. *Circuit Court Ruling*

¶ 33    On May 9, 2022, the court entered a written ruling on plaintiff's motion for default judgment. Therein, the court granted judgment to plaintiff "on all counts" and relief requested in the verified complaint. The order further indicated that the court had conducted a prove-up hearing that same day, and as such granted plaintiff damages and costs, including $431,868.42 in compensatory damages and $706 in costs, for a total of $432,574.42. The order further indicated that there was "no just reason to delay the enforcement or appeal of this judgment order." On or about June 2022, plaintiff submitted a claim with Berkeley Insurance, Tristate's insurance provider.[7]

¶ 34                                 *4. Tristate's Section 2-1401 Petition*

¶ 35    On July 27, 2022, Tristate filed an appearance and jury demand through new counsel, specifically the firm of Maron Marvel Bradley Anderson & Tardy LLC. Tristate also filed a

---

[7]Tristate maintains that plaintiff sent this claim to Tristate's insurer more than 30 days after the order was entered. Plaintiff does not appear to dispute this.

petition to vacate the default judgment pursuant to section 2-1401, which was supported by numerous exhibits, including the affidavit of Richard Greenwood.[8]

¶ 36    First, Tristate argued that it had "extensive meritorious defenses" to both its liability and the damages award. Tristate pointed out that the default order failed to apportion damages between the three different causes of action outlined in the complaint, which all suffered from their own deficiencies. With regard to the breach of contract claim, Tristate argued that the parties' contract provided for liquidated damages, and that the default order did not indicate that the damages were tied to that provision. As to the negligence claim, Tristate contended that plaintiff could not recover damages pursuant to the "*Moorman*" or "economic loss doctrine" as defined by the Illinois Supreme Court in *Moorman Manufacturing Co. v. National Tank Co.*, 91 Ill. 2d 69 (1982). Third, Tristate argued that the detinue claim was no longer actionable at law pursuant to *L & LC Trucking Co. v. Jack Freeman Trucking Co.*, 36 Ill. App. 3d 186 (1976). Even assuming that it was, Tristate continued, damages could only be awarded based on the "rental value of the chattel during the period of wrongful detention," which was not articulated in the damages award.

¶ 37    Tristate also challenged the overall amount of the damages in its brief and by Greenwood's affidavit. Tristate admitted that, as a result of third-party criminal activity at one of its storage facilities, some of plaintiff's belongings had been stolen and various authorities were still investigating the crime. In support of this contention, Tristate attached a copy of a police report from the Melrose Park Police Department dated May 5, 2021. However, Tristate continued, plaintiff's total damages were still "highly contested." Tristate asserted that plaintiff's insurer had

---

[8]Tristate styled its filing as a "motion," but consistent with the statutory text in section 2-1401, and to avoid confusion with plaintiff's motion for default judgment, we have chosen to refer to the filing as a "petition."

estimated the replacement cost of plaintiff's property to be $217,289.57, rather than the $431,868.42 in compensatory damages as awarded in the order. Tristate further pointed out that a "good portion" of plaintiff's property had been damaged by water, for which Tristate was not responsible, and even assuming it was, such items would still have to be assessed at fair market value. Tristate also stated that some of plaintiff's property had been returned, or that it had made attempts to return such items without the plaintiff's cooperation. Finally, Tristate posited that plaintiff had been reimbursed by her insurer for some of the claimed damages.

¶ 38    Next, Tristate argued that it had diligently presented its defenses in the original action. Tristate asserted that plaintiff had failed to notify it of all proceedings leading to the default judgment between late 2021 and early 2022.[9] In support of this contention, Greenwood averred that plaintiff's counsel never served or directly provided Tristate with any copies of motions, including the motion for default judgment, or copies of court orders entered in the case since December 14, 2021. This included, Greenwood continued, the March 1, 2022, order, which required service of plaintiff's initial proposed motion for summary judgment through both regular and certified mail.[10] With regard to the motion for default judgment, Greenwood reiterated that he did not have notice of the motion and thus had no opportunity to rebut plaintiff's claims at the uncontested prove-up hearing that had apparently occurred on May 9, 2202. Additionally,

---

[9]In a footnote, Tristate further suggested that its prior attorney, Adella Deacon, may have failed to comply with Supreme Court Rule 13(c)(4) by not filing a proof of service on the withdrawal order entered on October 21, 2021.

[10]In a footnote, Tristate argued that "all applicable administrative orders and standing orders" had been violated with regard to service of the motion for default judgment. In support of this, Tristate attached the standing order of another chancery judge, specifically Judge David B. Atkins.

Greenwood averred that he did not receive the entered default order until Tristate's insurer brought it to the company's attention on July 1, 2022, more than thirty days after its entry.[11]

¶ 39    Tristate also asserted that it had retained counsel immediately following service of the complaint, and that after its first counsel withdrew, had attempted to seek new legal representation throughout the case's duration. Greenwood averred that Tristate's attempts to retain new counsel had been primarily affected by its inability to afford such services. Greenwood averred that he had first sought private representation, and then reached out to pro bono legal organizations such as Chicago Volunteer Legal Services and Illinois Legal Aid. However, Tristate was further refused representation based on the nature of the litigation.

¶ 40    With regard to its diligence in filing the petition, Tristate asserted that when it first learned of the default order on July 1, 2022, it met with new counsel about two weeks later on July 15, and filed the instant petition as soon as possible. In support of this contention, Tristate attached various correspondence between plaintiff's counsel and Tristate's undersigned counsel, as well as plaintiff's insurer's correspondence to Tristate.

¶ 41    Finally, Tristate contended that "equitable principles" supported vacating the default order because the order was unfair, unjust, or unconscionable. Tristate maintained that it had been "completely unaware" of the motion for default, that a hearing was held, and that an order was entered in excess of the damages sought in the complaint.

¶ 42                         *5. Plaintiff's Response*

---

[11]An exhibit presumably attached to the motion for default judgment shows a letter from plaintiff's liability insurer, dated May 17, 2021, to Tristate regarding its intent to seek reimbursement of a claim for $50,000.

¶ 43    On August 4, 2022, plaintiff filed a citation to discover assets. On August 9, 2022, she further filed a notice of the citation to Tristate and addressed the notice to its Chicago location. On August 15, the court entered a briefing schedule on Tristate's petition and set the matter for hearing on November 29, 2022.

¶ 44    Plaintiff's response to the petition did not contain a counter-affidavit. Plaintiff argued, however, that Tristate was not entitled to relief because the default judgment was a "natural consequence" of Tristate's "avoidance" of the case. Plaintiff asserted that the "due diligence" requirement of a section 2-1401 petition required the movant to provide a reasonable excuse for failing to act in the original lawsuit, which could not be based on its own mistake or negligence. Plaintiff further argued that, pursuant to the Illinois Supreme Court's decision in *Smith v. Airoom*, 114 Ill. 2d 209 (1986), diligence could not be shown where a party was aware of the lawsuit and could have prevented entry of default by following the case's progress. Here, plaintiff asserted, Tristate had been properly served, had hired an attorney, and acknowledged receipt of her later withdrawal, thus indicating its knowledge of the case. Plaintiff also pointed out that Tristate's responsive pleading had been due *prior* to its first attorney's withdrawal, thus showing that Tristate had already been derelict in the case. With regard to Tristate's efforts to secure representation, plaintiff rejected Greenwood's affidavit as "vague," "unreliable," and insufficient to establish due diligence, as it failed to identify any of the attorneys it had sought for counsel. Even assuming that these statements were credible, plaintiff maintained that Tristate had not been excused from its duty to follow the case, where it could have tracked the docket, sent a representative to court hearings, or filed a *pro se* appearance, as required by the October 2021 court order.

¶ 45    Additionally, plaintiff argued that formal notices had not been required where Tristate failed to put an address on file for further communication. Plaintiff reasoned that, pursuant to

*Airoom* and Illinois Supreme Court Rule 11 (eff. July 1, 2021), notice of future hearings was a "mere courtesy" to parties with no contact information on file. Plaintiff pointed out that, since January 2022, the court had been emailing orders to the parties, but Tristate had not received them based on its failure to file an appearance. With regard to the March 1, 2022, order, plaintiff noted that the court's express directive to send a copy of the order to Tristate had been related to the potential filing of a motion for summary judgment, which she ultimately did not file after realizing that Tristate had never filed a responsive pleading. Plaintiff asserted that she had not been ordered by the court to provide the same notice to Tristate for the filing of her motion for default judgment as shown by the April 11, 2022, order. However, plaintiff reasoned, even assuming that such notice was required, this would still not supersede Tristate's duty to follow the case's progress.

¶ 46     Plaintiff also challenged the existence of any meritorious defenses. First, plaintiff argued that Tristate had not provided any evidence beyond a police report indicating that her property had been stolen. Second, with regard to Tristate's claim about inaccurate damages, plaintiff asserted that $355,468.42 of the total damages award were attributable to compensatory damages, which equaled the combination of the undamaged property and water-damaged property Tristate had yet to return. Third, plaintiff argued that her insurance company's valuation of the property was not a complete representation of the damages in the order, and further denied receiving a "double recovery" where she asserted that her insurance proceeds and receipt of returned items had not been included in the overall calculations. Fourth, plaintiff argued that the contract's liquidated damages provision was inapplicable where the company, and not the customer, had breached. Fifth, plaintiff argued that Tristate's defenses to the negligence and detinue claims did not undermine the judgment, and even if both claims were insufficient, her cause of action for breach of contract still supported the overall judgment.

¶ 47    Last, plaintiff argued that Tristate, specifically with regard to its lack of notice argument, could not present "extraordinary circumstances" to justify vacating the judgment outside of the statute's requirements based on equitable principles.

¶ 48                            *6. Tristate's reply*

¶ 49    Tristate maintained that it had exercised due diligence while it searched for new counsel and was "continuously uninformed" by plaintiff's counsel of the case's progress. Tristate provided further contacts of those it had attempted to retain for representation, although this information was not presented in a supplemental affidavit. Additionally, Tristate asserted that it had been limited in its efforts to retain counsel because plaintiff had gone to "great lengths" to put the company out of business by "constantly defaming [it]" by contacting local news organizations and community groups.

¶ 50    Next, Tristate reiterated that plaintiff's counsel had failed to provide Tristate with a fair opportunity to appear by not providing notice of various court orders and the motion for default judgment.[12] Tristate further suggested that plaintiff's counsel's lack of notice was "arguably purposeful" as plaintiff had knowledge of Tristate's mailing and e-mail addresses. Finally, Tristate maintained that, even if it had not satisfied the element of due diligence on its petition, the court could still vacate the judgment based on the facts and equities presented.

¶ 51                            *7. Circuit Court Ruling*

---

[12]In its reply, Tristate also observed that plaintiff's response was silent as to the allegation that she had "violated a Cook County Standing Order" defining notice requirements of motions for default judgment. However, in its petition, Tristate never argued that a standing order had been violated, and merely attached one to its filing.

¶ 52    On August 15, 2022, the court entered a written order indicating that it would hear argument on the petition on November 29, 2023.[13] On February 9, 2023, the court granted the motion by written order. First, as to the diligence element regarding the filing of the motion, the court noted that the parties "did not dispute that [Tristate had] exercised due diligence in filing its [petition] to vacate the May 9, 2022 default judgment[.]" The court agreed that Tristate had met its burden on that element, as it had filed its petition on July 27, 2022, less than 3 months after the entry of the default judgment, and within the two-year statutory period prescribed within section 2-1401. The court also observed that whether Tristate had presented a meritorious defense was "presently fact-intensive."

¶ 53    Next, the court indicated that the crux of the case concerned whether Tristate had "diligently apprise[d] itself of [the] case's progress" after Tristate's first attorney withdrew from the case. The court noted that on October 21, 2021, it granted Tristate's previous attorney's motion to withdraw, and provided the company with 21 days to hire new counsel and file a new appearance, which was to include an address to where notices could be sent. The court observed that it was not until July 27, 2022, that Tristate's current counsel of record filed an appearance on behalf of the company, which was 10 months after being ordered to do so, as well as two months after the default judgment was entered. Further, the court continued, although Tristate attempted to explain its efforts to obtain new counsel during that time period, it did not explain the company's failure to file its mailing address with the court while awaiting new representation in light of an express court order to do so. The court noted that, had Tristate filed its address with the court, it

---

[13]No report of proceedings was filed by any of the parties as required by Illinois Supreme Court Rule 323 (eff. July 1, 2017). Instead, plaintiff attached the transcript of the November 29, 2022 hearing as an exhibit in its appendix to its brief.

would have received subsequent court orders to apprise it of the case's progress, and thus, Tristate's "unaware[ness] of such progress was, at least in part, due to its own omissions."

¶ 54 With regard to the March 1, 2022, order, the court indicated that it had reviewed its "internal notes," which stated that plaintiff had been required to serve Tristate with a copy of that order, and that there was no evidence that plaintiff had done so. The court noted that plaintiff's failure to serve the order violated Cook County Cir. R. 1.1(a), which provided that notice of all proceedings in a case must be given to parties not in default, as well as Cook County Cir. R. 6.1 and Supreme Court Rule 105(b), which together stated that notice should be given by any method provided by law if new or additional relief was sought against a party. The court pointed out that Tristate's address had been delineated in the motion to withdraw and affidavit of service, which plaintiff could have used to serve the March 1 order. Nevertheless, the court continued, despite this failure to serve the order, it still "did not prohibit [Tristate] from independently looking into the events of the case," especially after its attorney withdrew. As such, the court asserted, "it remain[ed] questionable that [Tristate] acted diligently throughout the events leading up to the entry" of the default judgment.

¶ 55 Despite these findings, the court determined that "equitable principles still militate[d]" that the default judgment should be vacated if its enforcement would be unfair, unjust, or unconscionable, even if due diligence had not been satisfied, citing *Airoom*. Further, the court reasoned, when addressing a petition to vacate a default judgment, courts were instructed to decide cases on the merits whenever possible. The court observed that the default judgment of $432,574.42 was "substantial in nature and highly contested," and thus, the equities dictated that the judgment should be vacated. As such, the court further quashed plaintiff's pending citation to discover assets and ordered Tristate to file a responsive pleading by March 9, 2023.

¶ 56    This appeal followed.

¶ 57                              II. ANALYSIS

¶ 58                              A. Jurisdiction

¶ 59    Plaintiff asserts that we have jurisdiction over her appeal pursuant to Illinois Supreme Court Rule 304(b)(3) (eff. March 8, 2016). The general rule is that appellate jurisdiction is only conferred upon the timely appeal of a final order, which is one that "disposes of the rights of the parties, either upon the entire controversy or upon some definite and separate part thereof." *John G. Phillips & Associates v. Brown*, 197 Ill. 2d 337, 341 (2001). However, Illinois Supreme Court Rule 304(a) allows for the appeal of certain final judgments even if the case has not fully resolved, so long as the court makes an express written finding that there is no just relay for delaying either enforcement, appeal, or both. Ill. S. Ct. R. 304(a) (eff. March 8, 2016). Additionally, Rule 304(b)(3) provides for the appeal of an order without Rule 304(a)'s requisite language if the notice of appeal is filed within 30 days and involves the grant or denial of a section 2-1401 petition. Here, the record demonstrates that plaintiff filed her notice of appeal within 30 days of the court's grant of the section 2-1401 petition. Thus, we have jurisdiction over this matter.

¶ 60                    B. Section 2-1401 and Standard of Review

¶ 61    We begin with a summary of the relevant statute. Section 2-1401 provides a "comprehensive statutory procedure authorizing a trial court to vacate or modify a final order or judgment in civil and criminal proceedings." *Warren County Soil & Water Conservation District v. Walters*, 2015 IL 117783, ¶ 31. Specifically, section 2-1401 governs relief from final orders and judgments entered more than 30 days prior. 735 ILCS 5/2-1401(a). A section 2-1401 proceeding constitutes an "independent and separate action from the original action." *Warren County*, 2015 IL 117783, ¶ 31. To seek relief, a party must file a petition in the proceeding by which the judgment

was entered. 735 ILCS 5/2-1401(b). The petition must be supported by affidavit "or other appropriate showing as to matters not of record." *Id.* The petition must also be filed within two years after the entry of the order or judgment. *Id.* § 2-1401(c).

¶ 62    The purpose of the Act is to "give litigants a chance after judgment is entered to present facts to the court that, if known at the time the judgment was entered, would have prevented the entry of judgment." *Giles v. Parks*, 2018 IL App (1st) 163152, ¶ 19. A 2-1401 petition is "not intended to allow a litigant to be relieved of the consequences of his [or her] own mistake or negligence[.]" *Id.* It is the movant's burden to "rebut the presumption that the judgment is correct and to demonstrate that there has been no lack of due diligence[.]" *Id.* In order to meet its burden, the movant must set forth "specific factual allegations" which support the finding that the movant: (1) has a meritorious claim or defense; (2) exercised due diligence in presenting its claim to the trial court in the original action; and (3) exercised due diligence in filing the petition. *Id.* Additionally, as we discuss later, section 2-1401 also allows for the circuit court to exercise discretion in vacating a judgment based on principles of equity. *Warren County*, 2015 IL 117783, ¶ 35.

¶ 63    Plaintiff asserts that the standard of review over her appeal is abuse of discretion because the case presents a "fact-based challenge," a proposition that is unchallenged by Tristate. As noted by both parties, the seminal case concerning section 2-1401 petitions is *Smith v. Airoom*, 114 Ill. 2d 209 (1986). Therein, our supreme court determined that the "quantum of proof necessary" to meet a movant's burden on such a petition is preponderance of the evidence, with relief lying within the sound discretion of the trial court based on the relevant facts and equities. *Id.* at 221. *Airoom* was further expounded upon by our supreme court in *Warren County Soil & Water Conservation District v. Walters*, 2015 IL 117783, which recognized that a section 2-1401 petition

can "present either a factual or legal challenge" based on the "nature of the challenge presented," which in turn dictates the proper standard of review on appeal. *Id.* ¶¶ 31, 41. A fact-dependent petition is resolved by consideration of the facts, circumstances, and equities of the underlying case, and ultimately assesses whether the court would have precluded entry of the judgment had it been made aware of certain events or facts. *Id.* In contrast, where the challenge is legal-based, a party need not argue the meritorious defense or due diligence requirements to meet its burden. *Id.* ¶¶ 41, 48. Legal-based challenges are limited to motions like those seeking judgment on the pleadings or dismissal, which can include arguments concerning effectiveness of counsel (*People v. Lawton*, 212 Ill. 2d 285, 300-302 (2004)) or improper service of process (*Sarkissian v. Chicago Board of Education*, 201 Ill. 2d 95 (2002)). See *Warren County*, 2015 IL 117783, ¶¶ 41, 45.

¶ 64    Arguably, Tristate's petition presents a mix of fact-dependent and legal-based challenges. Factually, Tristate's contentions centered on its meritorious defense claims, the propriety of the damages award, its belief that it had exercised due diligence prior to the entry of the default judgment, and its claims regarding the lack of notice of the ongoing proceedings. Legally, some of Tristate's meritorious defense contentions rested on the fact that plaintiff could not recover damages under certain theories of recovery, as well as that plaintiff had a duty to provide notice of the ongoing litigation based on local and supreme court rules.

¶ 65    However, Tristate does not argue that the entire judgment is *voidable* as a matter of law; rather, it argues that the overall damage award would likely be significantly reduced if it had an opportunity to present its defenses. Further, as noted in her brief, the crux of plaintiff's appeal concerns the due diligence element and whether the circuit court properly exercised its discretion in vacating the judgment based on equitable grounds. Accordingly, we believe the proper standard of review to be abuse of discretion. See *KNM Holdings, Inc. v. James*, 2016 IL App (1st) 143008,

¶ 18 (even where defendants contended that the imposition of a default judgment was an inappropriate sanction as a matter of law, the crux of the appeal concerned whether defendants met their burden as to diligence, which are factual concerns); *Harris Bank, N.A. v. Harris*, 2015 IL App (1st) 133017, ¶ 60 (section 2-1401 petition which asserted numerous factual allegations concerning the plaintiff's misconduct and other reasons for not diligently participating in litigation presented a fact-dependent challenge); Compare *People v. Vincent*, 226 Ill. 2d 1, 10-14 (2007) (trial court's denial of a section 2-1401 petition, where non-movant did not file a response brief and court denied the petition without a hearing, was tantamount to dismissal of action for failure to state a claim, and thus considered a legal challenge).

¶ 66                                     C.  Other Preliminary Matters

¶ 67     Before proceeding, we pause to address some matters regarding the report of proceedings as well as the party's inappropriate use of footnotes.  First, although not raised by Tristate, plaintiff attached a report of proceedings as an exhibit to her brief. The report, however, was not included in the filing of the common law record. Both parties' briefs allude to various portions of the hearing held on the petition, which is contained within that exhibit. However, Supreme Court Rule 323 requires that the report of proceedings must be transcribed and certified as to its accuracy, as well as filed with the clerk of the circuit court. Ill. S. Ct. R. 323(a), (b) (eff. July 1, 2017). No such report was filed by plaintiff in this manner, and our review of the record has not revealed any motion to supplement the record to include it, which is evidenced by plaintiff's failure to cite to it throughout her brief. Although our rules require the filing of an appendix to appellant's brief, the failure to properly file the report of proceedings does not allow us to consider it in our resolution of the case. See Ill. S. Ct. R. 342 (eff. Oct. 1, 2019). As such, we will not consider any material contained within the report of proceedings, nor any arguments made by either party regarding the

circuit court's oral pronouncements or discussion therein. Further, "[w]ithout an adequate record preserving the claimed error, the court of review must presume that the [circuit] court's order conforms with the law." *Illinois Neurospine Institute, P.C. v. Carson*, 2017 IL App (1st) 163386, ¶ 33 (quoting *People v. Carter*, 2015 IL 117709, ¶ 19); *Foutch v. Bryant*, 99 Ill. 2d 389, 393-94 (1984).

¶ 68    Second, both parties use footnotes to advance substantive arguments or, rather, to further quibble over facts already presented in their briefs. It is within our discretion to strike such footnotes as violations of Illinois Supreme Court Rule 341(a) (eff. Oct. 1, 2020) (discouraging the use of footnotes); see also *Benz v. Department of Children and Family Services*, 2015 IL App (1st) 130414, ¶ 27. Although certainly disputed, the facts of this case are relatively uncomplicated, and there was no need to re-litigate within footnotes. However, as striking a party's brief, in whole or in part, is a harsh sanction and only appropriate where the violations otherwise hinder our review, we instead admonish both parties that failure to comply with our supreme court rules is not an inconsequential matter. See *Illinois School District Agency v. St. Charles Community Unit School District 303*, 2012 IL App (1st) 100088, ¶ 31. Having disposed of these preliminary procedural matters, we now turn to the merits of plaintiff's appeal.

¶ 69                      D. Whether the 2-1401 Petition was Properly Granted

¶ 70    As noted prior, on a petition to vacate a default judgment, a movant must meet all three elements of section 2-1401. At first glance, the issues presented for review in plaintiff's brief concern two main issues, namely Tristate's due diligence throughout the case, and the court's exercise of discretion in vacating the judgment. However, within her brief, plaintiff still makes note of the other two section 2-1401 requirements. Specifically, with regard to Tristate's petition concerning its purported meritorious defenses, we observe that, in a footnote, plaintiff states that

the circuit court "deemed the meritorious defenses element 'fact intensive' " and did not otherwise analyze the claim. In that same footnote, plaintiff also asserts that although she "does not concede [that] Tristate has meritorious defenses to the underlying action, she will confine her argument on the due diligence issue because it is the only issue the [c]ircuit [c]ourt rule[d] upon." In its response brief, Tristate states that one of its defenses would have involved the "Moorman doctrine," otherwise known as the Illinois economic loss doctrine, which provides that no plaintiff may recover solely economic damages from a negligence tort, citing *Moorman Manufacturing Co. v. National Tank Co.*, 91 Ill. 2d 69 (1982).

¶ 71    "The mere assertion of a meritorious defense, without more, does not warrant relaxation" of the other requirements of the petition. *Illinois Neurospine Institute, P.C.*, 2017 IL App (1st) 163386, ¶ 31. Here, the record reflects that the parties fully briefed the issue of whether Tristate had proffered meritorious defenses in support of its petition, but it does not appear that the court made any express findings on this element, other than noting that Tristate's purported defenses were "presently fact-intensive" and that the damages award was "substantial in nature and highly contested." However, on appeal, plaintiff does not present any cogent argument as to this finding, and as such, we deem this argument to be forfeited. See Ill. S. Ct. R. 341(h)(7) (eff. Oct. 1, 2020) ("Points not argued are forfeited" where an argument does not contain citation of authorities and the pages of the record relied upon); see also Ill. S. Ct. R. 341(a) (discouraging advancement of substantive arguments in footnotes).

¶ 72    Second, also in a footnote, plaintiff concedes, as she appeared to do before the circuit court, that Tristate acted with due diligence in bringing forth its petition, which Tristate does not address. In its written order, the circuit court found that Tristate had met its burden on this element, as the default judgment order was entered on May 9, 2022, and the petition to vacate was filed on July

27, 2022. Tristate also averred through affidavit that it did not learn of the entry of the default judgment until July 1, 2022, which was unrebutted by plaintiff in her response brief before the circuit court. As such, based on plaintiff's failure to address this element of the petition on appeal, we also find this argument to be forfeited.

¶ 73    Having addressed these two elements, we turn to the main contentions on appeal. Although the plaintiff characterizes her challenge of the circuit court's ruling in multiple ways, the essence of her appeal boils down to these points: (1) Tristate did not exercise due diligence in the underlying action; and (2) there were no "extraordinary circumstances" to justify vacating the default judgment on equitable grounds.

E. *Summary of Airoom – The Seminal Case*

¶ 74    Both parties cite *Airoom* as persuasive to our resolution of both the due diligence issue as well as the trial court's equity consideration. Thus, we first summarize the facts and holding in *Airoom* before proceeding with our analysis. In *Airoom*, the plaintiffs sought to recover compensatory and punitive damages from the defendant company based on allegedly defective construction and installation of a solar unit at the plaintiffs' residence. 114 Ill. 2d at 214-15. The defendant was served with the complaint at its place of business in Chicago through one of the company's sales managers. *Id.* at 215. The defendant failed to file an answer or otherwise appear within the requisite time period, and the plaintiffs filed a motion for default judgment. *Id.* The matter was further continued for a prove-up hearing, where the plaintiffs presented documentary evidence and testimony in support of their damages request. *Id.* at 215-216. Although the court denied the plaintiffs' request for punitive damages, it nonetheless entered an award of $50,000 for compensatory damages plus costs. *Id.* at 216.

¶ 75    Six months after judgment was entered, the plaintiffs served a non-wage-garnishment summons onto a bank to satisfy the judgment. *Id.* One month after the garnishment summons was served, the defendant, now represented by counsel, filed a verified petition under section 2-1401 to vacate the judgment. *Id.* Among other contentions, the defendant argued that service on the company's sales manager had been legally improper, the defendant's failure to respond to the default motion was "excusable" based on that same improper service, and that the defendant had never been made aware of the default judgment even while physically situated on the plaintiffs' premises. *Id.* at 216-17. The petition was further supported by the affidavits of four individuals, including: (a) the defendant's president and registered agent, who claimed to not have knowledge of the pending litigation until he received the non-wage garnishment summons; and (b) the sales manager who had been served but averred that he did not have authority to receive the summons. *Id.* at 216-18.

¶ 76    The plaintiffs filed a response, which was also supported by numerous counter-affidavits. *Id.* at 218-220. Therein, among others, the plaintiffs challenged the defendant's diligence argument that the company did not know about the litigation, specifically in that: the plaintiffs' attorney had spoken to the defendant's president about the litigation; it was "common knowledge" even among the personnel and sales force of the company that litigation was ongoing; and the defendant's contractors had overheard the plaintiffs and their attorney threaten litigation against the defendant. *Id.* at 218-220.

¶ 77    In reply, the defendant filed two supplemental affidavits, one in which the defendant's president admitted to receiving the summons and complaint, but had otherwise believed the case was not proceeding because the defendant was attempting to resolve the structural issues of the plaintiffs' home outside of litigation. *Id.* at 220. The president further averred that neither the

plaintiffs nor their counsel had advised him that a default judgment had been entered in the matter. *Id.*

¶ 78    Following a hearing, the circuit court entered an order denying the petition, partly because the defendants had "failed to disclose diligence" and that there was no evidence that the plaintiffs had acted unfairly or unreasonably. The appellate court affirmed, and the defendant appealed to our supreme court, which ultimately agreed with both lower courts. *Id.* The court determined that the defendant could not show due diligence in bringing forth its defenses due to its "own negligence and indifference to or disregard of the circuit court's process." *Id.* at 223-24, 225. It pointed out that the defendant's initial argument that it had not received the summons or complaint was belied by the defendant's supplemental affidavit in support of its reply. *Id.* at 224. It further found that the defendant had been given "ample opportunity to avoid the default judgment by filing its answer and appearance," and thus could not find solace in "out-of-court negotiations and good-faith attempts to settle the dispute." *Id.* The court acknowledged that although "the law encourages out-of-court settlement," it was still "imperative that defendants not disregard their legal rights and obligations" because if the defendant had "kept abreast of [the] litigation, it would have known of the entry of the judgment." *Id.* at 224-25. The court further cautioned that "[]relief under section [2-1401] is available only to those who diligently pursue their legal defenses and remedies in court, not to those who disregard these procedures on the gamble that better results can be obtained through other procedures or at a cheaper cost." (Internal citations and quotations marks omitted.) *Id.* at 224.

¶ 79              *1. Due diligence in presenting the claim or defense*

¶ 80    Plaintiff contends that the circuit court "did not take a firm stance on whether Tristate established due diligence in the underlying case." Citing *Airoom*, among other cases, as analogous,

Plaintiff maintains that Tristate did not act diligently as it could have avoided the default judgment by filing an answer or *pro se* appearance, or independently tracking the case's progress. Further, plaintiff attacks the Greenwood affidavit in support of the petition as unreliable and insufficient to excuse Tristate's lack of participation in the case. Additionally, plaintiff preemptively contends that, as dictated by *Airoom* and Supreme Court Rule 11, she cannot be held responsible for Tristate's lack of diligence by failing to serve the company with notice of any motions it intended to file, or orders entered by the court.

¶ 81     Tristate responds that it acted reasonably under the circumstances for failing to participate in the case until after the entry of the default judgment. Tristate recounts that it was "abandoned" by its counsel and was forced to retain new representation in a short period of time, and that its "extensive efforts" fell short based on the cost of hiring a new attorney, financial hardships following plaintiff's purported smear campaign against the company, and the ongoing investigation into plaintiff's stolen property. Tristate also urges us to consider plaintiff and plaintiff's counsel's actions in further assessing due diligence as dictated by *Airoom*. Tristate contends that it did not receive any notification of the case's progress, despite an express court order for plaintiff to do so. Tristate reiterates that the court's March 1, 2022 order relating to the upcoming filing of a motion for summary judgment, in addition to local court rules, required plaintiff to keep Tristate apprised, which she did not do. Tristate also points out that plaintiff did not provide notice of the default judgment until after 30 days, which created a substantially more difficult burden for Tristate to meet, as moving to vacate a judgment within 30 days would have otherwise implicated a different provision in the statute, specifically section 2-1301(e) of the Code of Civil Procedure (735 ILCS 5/2-1301(e) (West 2020)).

¶ 82　　In reply, plaintiff maintains that she had no duty to serve a copy of the motion for default judgment, as there was no such directive requiring her to do so. However, plaintiff concedes that the circuit court later indicated that the motion should have been served to Tristate.

¶ 83　　*Airoom* requires that "due diligence" must equate to a "reasonable excuse for failing to act within the appropriate time period" because section 2-1401 "was not intended to relieve a litigant of the consequences of his [or her] own mistake or negligence." 114 Ill. 2d at 222; *Warren County*, 2015 IL 117783, ¶ 38. There is no "bright-line rule" for assessing "reasonableness." *Illinois Neurospine Institute, P.C.*, 2017 IL App (1st) 163386, ¶ 27. Instead, "reasonableness" is dictated by all the surrounding circumstances, including the conduct of the litigants and their attorneys. *Airoom*, 114 Ill. 2d at 222-23; *Warren County*, 2015 IL 117783, ¶ 38.

¶ 84　　We return to the record here. We first observe that plaintiff, in both the court below and here now, challenged some of the averments contained in Tristate's 2-1401 petition, specifically as to the Greenwood affidavit's discussion of plaintiff's stolen belongings and damages. See *Airoom*, 114 Ill. 2d at 223 (if the non-moving party challenges the facts supporting a request for relief under section 2-1401, a full and fair evidentiary hearing must be held); *Warren County*, 2015 IL 117783, ¶ 38; *Bonanza International, Inc. v. Mar-Fil, Inc.*, 128 Ill. App. 3d 714, 718 (1984). However, plaintiff did not file a counter-affidavit in support of her response to the petition, and there is no indication in the record that either party requested an evidentiary hearing at the time the petition was heard. See *Airoom*, 114 Ill. 2d at 223 (where a party waives their right to an evidentiary hearing when the facts of a 2-1401 petition are challenged, the court may evaluate the petition based on the pleadings, affidavits, and supporting materials in evidence). As such, we assess the record in light of these considerations.

¶ 85    We turn to the circuit court's written order. The court observed that, after Tristate's previous counsel withdrew, Tristate was given 21 days to hire new counsel and file an appearance with an address in which notices should be sent. However, the court noted, new counsel was not obtained until 10 months after being ordered to do so, and not until two months after the default judgment was entered. The court reasoned that had Tristate filed a mailing address with the court while seeking new representation, Tristate would have been "informed *** of the progress of this case." As such, the court attributed Tristate's "unawareness of said progress *** at least in part[] due to its own omissions." The court balanced these considerations against plaintiff's failure to serve any copies of orders to Tristate, including a March 1, 2022, order requiring it to do so. Nevertheless, the court stated that it "remain[ed] questionable that [Tristate] acted diligently throughout the events leading up to the entry of the May 9, 2022, default judgment." Finally, the court noted that it could vacate the judgment based on equitable grounds, even if the due diligence requirement had not been satisfied.

¶ 86    Although the court made no definitive ruling on the degree of Tristate's diligence other than characterizing it as "questionable," the inference to be drawn from the whole of the court's comments is that Tristate failed to meet its burden on that factor. Our review of the proceedings leading up to the default judgment supports this inference. First, Tristate's knowledge of the case was undisputed. It had been served with the summons and complaint and had already appeared through counsel. It is also undisputed that Tristate was made aware that its first attorney was withdrawing, and as shown by the Greenwood affidavit, Tristate knew it had to retain new counsel pursuant to a court order, as it delineated its efforts to find counsel in spite of its purported financial concerns. Even if Tristate's claims regarding its financial difficulties in securing counsel are to be taken as true, attempting to find representation at a "cheaper cost" did not excuse Tristate's

"disregard for [its] legal rights and obligations" in a case of which it was well aware. *Airoom*, 114 Ill. 2d at 224; see also *European Transpa Inc. v. Shrader*, 242 Ill. App. 3d 103, 107 (1993) (noting that the defendants' contention that it could not afford counsel was unsupported by the record and did not explain how they were suddenly able to afford representation thereafter).

¶ 87    Moreover, as noted by the circuit court, Tristate's search for legal counsel did not excuse it from putting its mailing or formal email address on file, as required by the October 21 court order. See *Charles Austin, Ltd. v. A-1 Food Services, Inc.*, 2014 IL App (1st) 132384, ¶ 43 ("Once a court acquires jurisdiction over a party, the litigant has a duty to track the progress of his or her case.") Supreme Court Rule 13(c)(5) (eff. Jan 1, 2023)[14] dictates that, following the withdrawal of an attorney, a party must file a supplemental appearance within 21 days after the date of the order of withdrawal is entered. The supplementary appearance must provide "an address at which the service of notices or other documents may be had upon him or her," and a self-represented party may also include an e-mail address in accordance with Supreme Court Rule 11(b). *Id.*[15] Further, "[i]n the case of the party's failure to file such supplementary appearance, subsequent notices and filings shall be directed to the party *at the last known business or residence address*." (Emphasis added.) *Id.*

¶ 88    Additionally, nothing in the petition or the attached affidavit evidences any belief that Tristate could have reasonably believed that somehow the case was resolved or not further progressing. See *Airoom*, 114 Ill. 2d at 224-25 (even good-faith settlement attempts do not excuse

---

[14]Although the rule has since been amended, the pertinent provisions cited were not.

[15]Supreme Court Rule 11(b) (eff. July 1, 2021) provides that a "self-represented litigant who has an e-mail address must also include the e-mail address on the appearance and on all pleadings filed in court to which documents and notices will be served in conformance with [rule] 131(d)." Supreme Court Rule 131(d) (eff. July 15, 2020) further expounds upon Rule 11, stating that if a "self-represented litigant does not designate an e-mail address, then service upon and by that party must be made by a method specified in Rule 11 other than e-mail transmission."

a defendant from disregarding its legal rights and obligations "on the gamble that better results can be obtained through other procedures or at a cheaper cost.") (Internal citations and quotations marks omitted.); *Illinois Neurospine Institute, P.C.*, 2017 IL App (1st) 163386, ¶ 36 (rejecting assertion of due diligence where defendant admittedly received the complaint and chose not to respond to it due to its focus on a separate lawsuit and belief that it had resolved the issues in the underlying case). Tristate does not assert that its failure to receive notices supported its belief that the case was over, and the record shows that it only chose to act when it apparently received a request from its insurer for payment of the damages outlined in the default judgment. See, e.g., *Illinois Neurospine Institute, P.C.*, 2017 IL App (1st) 163386, ¶¶ 35-36 (rejecting diligence argument where party only moved to vacate default judgment following settlement of additional lawsuit); *European Transpa, Inc.*, 242 Ill. App. 3d at 107-08 (indifference to the legal process is not an excusable mistake). As such, we agree with plaintiff that, based on the circumstances, Tristate's independent reasons for failing to participate in the litigation over the course of one year, after the complaint and its initial appearance was filed, and about 10 months following Tristate's first attorney's withdrawal from the case, does not constitute an "excusable mistake," but rather, "negligence and indifference." *Airoom*, 114 Ill. 2d at 222, 225.

¶ 89    Even so, as noted prior, the circuit court's decision ultimately hinged on its assessment of the "equities" in the case, and, as *Airoom* dictates, the "reasonableness of the excuse" also allows us to consider the "conduct of the litigants and their attorneys." *Id.* at 222. The parties' arguments regarding lack of notice, although also interwoven within the due diligence discussion, concern the circuit court's exercise of its equitable powers to prevent enforcement of an unfair, unjust, or unconscionable judgment, which we discuss below. *Id.* at 225.

¶ 90                    2. *Whether the Equities Dictated Vacatur of the Default Judgment*

¶ 91 Plaintiff argues that because Tristate could not satisfy its diligence requirements, it could only obtain relief on its 2-1401 petition through the circuit court's exercise of its equitable powers. Plaintiff contends that the circuit court erred by engaging in a "general balancing of the equities" where the record did not present any evidence of "extraordinary circumstances" to justify the court's decision. On that latter point, plaintiff asserts that Tristate's purported "lack of notice" is a commonplace excuse and not an "extraordinary circumstance" that should invoke the court's equitable powers.

¶ 92 According to plaintiff, Illinois law restricts relaxation of the due diligence requirements to two categories of cases, specifically cases in which: (1) the plaintiff engaged in fraud to obtain or conceal the judgment; and (2) where enforcement of the judgment would cause the defendant to suffer from a unique injustice, citing *Airoom*, *KNM Holdings*, 2016 IL App (1st) 143008, and *In re Marriage of Harnack and Fanady*, 2014 IL App (1st) 121424. Plaintiff asserts that *Airoom* is directly analogous because, there, our supreme court found that failure to provide a party notice of default proceedings or the judgment itself did not rise to the level of unfair, unjust, or unconscionable conduct that would otherwise undermine the judgment's legitimacy. Plaintiff acknowledges that the circuit court here appeared to characterize the damages award in the case as "unjust" based on it being "substantial" and purportedly "disputed," but argues that the court failed to identify any authority to support that justification. Additionally, plaintiff continues, the court placed unnecessary emphasis on plaintiff's counsel's purported failure to serve Tristate notice of the motion for default judgment. Plaintiff concedes that there had been "miscommunication issues" between the court and plaintiff's counsel as to whether service of the motion was required, but such discrepancies did not otherwise "play a material role" in the appeal.

¶ 93    Tristate responds that the circuit court's grant of the section 2-1401 petition on equitable grounds should be affirmed and rejects plaintiff's attempts to limit the court's discretion to cases involving concealment or fraudulent action. Moreover, Tristate maintains, a reasonable person could find that plaintiff and plaintiff counsel's attempts to conceal the default judgment placed Tristate in a position of unfairness. Such attempts, Tristate posits, included plaintiff's failure to provide notice of a motion for default and failure to serve court orders as required by our supreme and local court rules such as Cook County Cir. Rs. 1.1(a) and 6.1, and Supreme Court Rule 105(b). As such, Tristate reasons, it was unable to defend itself at a prove-up hearing where plaintiff "overstated" her damages by almost double what was originally alleged. With regard to the March 1, 2022, order, Tristate points out that plaintiff had been expressly ordered to serve the company with a copy of its motion for summary judgment, and by failing to do so, deprived Tristate of an opportunity to be heard prior to judgment, citing *John Isfan Construction v. Longwood Towers, LLC*, 2016 IL App (1st) 143211, as analogous. Further, Tristate argues, plaintiff and plaintiff's counsel failed to provide notice of the order itself until after 30 days had passed.

¶ 94    Tristate additionally argues that the amount of damages is another reason to set aside the order, citing *Johnson v. Wal-mart Stores, Inc.*, 324 Ill. App. 543 (2001), as persuasive. Tristate contends that the amount is "highly contested" and unconscionable as it encompasses damages not alleged in the complaint or otherwise unaccounted for. Tristate points out that plaintiffs' property insurer had assessed the replacement costs of plaintiff's property at a much smaller amount, $217,289.57, and that plaintiff had already been partially reimbursed for that amount. Tristate also notes that it intends to challenge the legal sufficiency of the damages award pursuant to the *Moorman* or "economic loss" doctrine.

¶ 95    In reply, plaintiff challenges, as she did below, many of the facts asserted by Tristate with regard to damages. Plaintiff also points out that all of the cases relied upon by Tristate for its lack of notice argument turned on the resolution of section 2-1301 petitions, not 2-1401.

¶ 96    In *Airoom*, our supreme court also considered the extent of the circuit court's ability to relax the due diligence requirements on a section 2-1401 petition. 114 Ill. 2d at 225-31. There, the defendant argued that, because the plaintiffs had failed to give it notice of the default proceedings, as well as notice of the entered judgment within 30 days, the due diligence requirement should be relaxed. *Id.* at 226. Our supreme court ultimately rejected this argument. *Id.* Preliminarily, the *Airoom* court acknowledged that "one of the foundational principles" in administering section 2-1401 relief was that the petition invoked the circuit court's equitable powers if enforcing the default judgment would be unfair, unjust, or unconscionable. *Id.* at 225. It further observed that circuit courts did not consider themselves "strictly bound by precedent," if "justice and good conscience may require" vacatur of such a judgment even when "the requirement of due diligence has not been satisfied." *Id.* at 225.

¶ 97    Nevertheless, the court found that nothing in the record compelled it to find any "allegedly unfair, unjust, or unconscionable conduct" that required the otherwise "rigorous application of the due-diligence standard" to be "soften[ed]" in the case. *Id.* at 226. With regard to the defendant's suggestion that a plaintiff had to notify the defendant of the default hearing or an intention to seek a default judgment, the court stated that the plaintiffs "were under no legal responsibility" to do so under either the Code of Civil Procedure or the local rules of the circuit court, given that the defendant had not filed an appearance. *Id.* Although the court acknowledged that the plaintiffs could have provided notice as a matter of "professional courtesy," an express requirement to do so

would have placed an impermissible "affirmative" and "ethical obligation" on the plaintiffs in an otherwise "adversarial" proceeding. *Id.* at 226-27.

¶ 98    Additionally, the court continued, the argument concerning the plaintiffs' failure to advise the defendant of the entry of the default judgment within 30 days was also insufficient. *Id.* at 227. The court acknowledged that "failure to give notice of, or to execute upon, a default judgment within 30 days of its entry may be *a* factor to be considered in determining whether the plaintiff has acted so unfairly as to justify relaxation of the due-diligence standard[.]" *Id.* However, the court stated, "additional circumstances must exist to compel the conclusion that the party obtaining the *ex parte* judgment would gain an unfair, unjust, or unconscionable advantage if the judgment were not vacated[.]" (Emphasis in original.) *Id.* According to the court, there was no evidence of conduct by either the plaintiffs or their counsel that had been "designed to mislead or lull [the defendant] into believing that the case was proceeding normally while in the meantime obtaining a default judgment." *Id.* at 228. The court also rejected any notion that the plaintiffs' attorney had "fraudulently concealed the entry of the judgment or prevented [the defendant] from knowing of it by any trick or contrivance" to lead the defendant to believe that the matter had been settled or that legal remedies were not being pursued. (Internal citation and quotations marks omitted.) *Id.* Accordingly, the *Airoom* court determined that "equitable principles [did] not require the judgment to be vacated." *Id.* at 229.

¶ 99    As our supreme court reiterated in *Warren County*, *Airoom* is the seminal case concerning 2-1401 petitions, but that same court has also cautioned that the resolution of a 2-1401 petition "depend[s] largely on the specific facts of the case." 2015 IL 117783, ¶ 40. Despite this caveat, our courts have interpreted this part of *Airoom*'s discussion to mean that relaxation of the due diligence requirement is justified only under extraordinary circumstances. See *Illinois Neurospine*

*Institute, P.C.*, 2017 IL App (1st) 163386, ¶ 30 (quoting *Ameritech Publishing of Illinois, Inc. v. Hadyeh*, 326 Ill. App. 3d 56, 60 (2005) (noting that *mitigating* circumstances may excuse the imputation of an attorney onto a 2-1401 movant)); *KNM Holdings, Inc.*, 2016 IL App (1st) 143008, ¶ 27; *European Transpa, Inc.*, 242 Ill. App. 3d at 108; *Gonzalez v. Profile Sanding Equipment, Inc.*, 333 Ill. App. 3d 680, 689 (2002) ("Although it is true that some decisions have relaxed or even excused the due diligence requirements, courts have only done so in extraordinary circumstances where it is necessary to prevent an *unjust* entry of default judgment [citation], or where there is unconscionable conduct by the opposing party that would require that the due diligence requirement be relaxed [citation]." (Emphasis in original.)). These decisions, as noted by plaintiff here, have interpreted "extraordinary circumstances" to mean evidence of fraudulent conduct by the plaintiff in procuring or concealing the judgment, or other otherwise unusual circumstances that would make enforcement unjust. See *McGinley Partners, LLC v. Royalty Properties, LLC*, 2018 IL App (1st) 172976, ¶ 32; *European Transpa, Inc.*, 242 Ill. App. 3d at 108.

¶ 100   However, we do not read *Airoom* as narrowly as plaintiff does here. Nowhere in *Airoom* did our supreme court limit the relaxation of the due-diligence standard based on those specific categories of conduct identified by the plaintiff. It is true that the court found against the defendant in *Airoom* based on a lack of evidence pointing to "unfair, unjust, or unconscionable conduct" by the plaintiffs or their attorney. However, *Airoom* also reiterated the nature of a fact-based section 2-1401 challenge, with assessment of such a petition to be determined by "all of the circumstances" of the specific case, "including the conduct of the litigants and their attorneys." *Id.* at 223, 231; see also *Warren County*, 2015 IL 117783, ¶ ("The primary issue in *Airoom* depended largely on the *specific facts of that case*[.]") (Emphasis added.) As such, we reject plaintiff's contention that the circuit court's exercise of discretion in granting a 2-1401 petition is solely limited to two categories

of circumstances, although we certainly find these lines of cases helpful in assessing whether the circuit court properly exercised its discretionary authority. Further, we are guided by the principles pronounced in *Airoom* that, although "a liberal construction must be given to the petition to prevent an unjust result[,]" at the end of the day, "the ambit of section 2-1401 relief must not be overbroadened to such an extent that principles of equity and an ordered concept of justice are diluted[.]" (Internal quotations marks and citations omitted.) 114 Ill. 2d at 227.

¶ 101   With this framework in mind, we return to the record. Here, the circuit court determined that relaxation of the due-diligence standard was appropriate based on the "equities in the case." Although it acknowledged that it "remain[ed] questionable that [Tristate] acted diligently" prior to the entry of the default judgment, the court was troubled by the fact that Tristate had not been served with orders in the case following its previous attorneys' withdrawal, including the March 1 order which expressly required notice. It also noted that the default judgment was "substantial in nature" and "highly contested," and earlier in the order, stated that Tristate's assertion of various meritorious defenses was highly fact-dependent.

¶ 102   Our resolution of this matter requires us to balance each party's conduct throughout the course of this litigation. In so doing, we are mindful of the applicable standard of our review. Based on the facts before us, and under the abuse of discretion standard applicable to the assessment of a fact-dependent 2-1401 petition, we are hard pressed to find error in circuit court's decision to vacate the default judgment. First, we cannot ignore the court's seeming displeasure with plaintiff's failure to serve notice of any order on Tristate after its original attorney withdrew, particularly with regard to the March 1 order. In *Airoom*, it is true that the plaintiffs were found to be under no legal obligation to provide the defendant with notice of either the hearing for or of the motion for default judgment itself. *Id.* at 226. Notably, though, the court based this reasoning on

the fact that the defendant never filed an appearance, and thus no notice was required under either the code of civil procedure or the applicable local rules of the court in which the matter originated. *Id.*; see also *American Consulting Association v. Spencer*, 100 Ill. App. 3d 917, 922-23 (1981) (not being notified of proceedings may be "unavailing" in the absence of other facts in support of a "reasonable mistake" for failing to participate in a case). However, unlike in *Airoom*, it is undisputed that Tristate *had* filed an appearance in the case at its inception, and that there had been significant communications between Tristate and plaintiff, both on her own accord and through counsel, prior to the instant litigation.

¶ 103   Next, although plaintiff is adamant that she never had a duty to notify Tristate of any ongoing proceedings or to provide it with copies of court orders, the circuit court's written order identified numerous local circuit and supreme court rules in support of its belief that notice could have, or should have, been given, especially given that Tristate had not yet been found to be in default at the time the motion was heard. See *In re Marriage of Jackson*, 259 Ill. App. 3d 538, 543 (1994) ("Local rules are not merely 'technicalities' designed to ensnare unwary litigants; instead, they constitute important safeguards for the efficient administration of justice."); *Piasa Motor Fuels, Inc. v. Illinois Department of Revenue*, 138 Ill. App. 3d 422, 427 (1985) (noting that local circuit court rules have the effect of a statute). Specifically, the court identified Cook County Cir. Ct. R. 1.1(a) (eff. July 1, 1976), which requires that "[n]otice of all proceedings in an action shall be given to all parties who have appeared and have not been found by the [c]ourt to be in default, unless notice is excused pursuant to [Illinois] Supreme Court Rule 104(c)."[16] The court also looked

---

[16]Although not cited by the circuit court in its order, we observe that Supreme Court Rule 104(b) (eff. Jan. 1, 2018) requires that "[p]leadings subsequent to the complaint, written motions, and other documents required to be filed shall be filed with the clerk with a certificate of counsel or other proof that the documents have been served on all parties who have appeared and have not theretofore been found by the court to be in default for failure to plead."

to Cook County Cir. Ct. R. 6.1(a) (eff. Feb. 15, 1994), which provides that "[e]xcept as provided herein, a service of a rule or order upon a party shall be made in the manner and upon the persons described in Supreme Court Rule 105(b)." In turn, Supreme Court Rule 105(a) (eff. Jan. 1, 2018), also cited by the court, provides that:

> "[I]f new or additional relief, whether by amendment, counterclaim, or otherwise is sought against a party not entitled to notice under Rule 104, notice shall be given [to them] as herein provided. The notice shall be captioned with the case name and number and shall be directed to the party. It shall state that a new pleading seeking new or additional relief against him has been filed and that a judgment by default may be taken against him for the new or additional relief unless he files an answer or otherwise files an appearance in the office of the clerk of the court within 30 days after service, receipt by certified or registered mail, or the first publication of the notice, as the case may be, exclusive of the date of service, receipt, or first publication. Except in case of publication, a copy of the new or amended pleading shall be attached to the notice, unless excused by the court for good cause shown on *ex parte* application." Ill. S. Ct. R. 105(a).

¶ 104    Additionally, Cook County Cir. Ct. R. 2.1 (eff. Aug. 21, 2000) governs notice of hearings for motions. Rule 2.1(a) requires that "[e]xcept in actions appearing on the daily trial call or during the course of trial, written notice of the hearing of all motions shall be given to all parties who have appeared and have not theretofore been found by the court to be in default for failure to plead, and to all parties whose time to appear has not expired on the date of notice." The notice of hearing is required to show the date and time, as well as the place where the motion is to be presented. Cook County Cir. Ct. R. 2.1(b). If the motion is written, a copy of the motion or a statement that

it has been served is to be sent with the notice. *Id.* Notice should be given to all persons described within Supreme Court Rule 11. Cook County Cir. Ct. R. 2.1(c)(i).

¶ 105    Finally, we further note that, pursuant to Supreme Court Rule 13(c)(5) (eff. Jan 1, 2023), even if a party fails to file a supplemental appearance after its counsel withdraws, "subsequent notices and filings shall be directed to the party *at the last known business or residence address.*" (Emphasis added.) *Id.* As noted by the court and as shown by the record, Tristate's original attorney's motion to withdraw as counsel and later filed affidavit of service contained Tristate's mailing address. Plaintiff's complaint also contained exhibits which listed the same mailing address, as well as at least two e-mail addresses, including that of Richard Greenwood. Thus, plaintiff was aware of various locations to send the orders and notices. The record further shows that, in at least one instance, the court found plaintiff's duty to serve notice to be extremely clear where plaintiff expressed an intention to file a motion for summary judgment. Although the motion that was actually filed was not that specific type, the default judgment effectively operated in the same manner to ultimately dispose of the case. See *Charles Austin, Ltd.*, 2014 IL App (1st) 132384, ¶ 19 (a plaintiff has no duty to notify a party of a default judgment "unless the question arose."); compare *European Transpa, Inc.*, 242 Ill. App. 3d at 108 (observing that the plaintiffs informed the defendants of the status of the case, even where the defendants had not filed an appearance and were not technically entitled to notice); *JP Morgan Chase Bank v. Fankhauser*, 383 Ill. App. 3d 254, 261-62 (2008) (movant failed to show diligence where the record showed that it continually received notices of proceedings, including a notice of its motion for entry of foreclosure judgment, notice of foreclosure sale, and notice of motion to confirm the foreclosure sale).

¶ 106    We also take note of the large damages award, although in so doing we express no opinion on the propriety of the ultimate award. We note, however, that in her complaint, plaintiff sought

damages in "excess of $200,000," as well as interest, attorney fees, and costs. She also contradictorily alleged that the value of her remaining property exceeded $335,000. In the affidavit attached to her motion for default judgment, plaintiff estimated her compensatory damages to be $431,868.42, and this later request was granted at a prove-up hearing conducted on the same day that the motion for default was presented. Notably, as pointed out by Tristate, the order does not indicate if attorney fees or interest were awarded, and thus there is almost a $100,000 difference between what was originally requested in the complaint and what was eventually awarded. This is concerning, given that, even today, in response to Tristate's argument that some of those damages were already accounted for by plaintiff's liability insurer or through return of certain items, plaintiff admitted that some costs *had* been reimbursed, although it is unclear to what extent they were and how the default judgment accounted for those considerations. See *Halle v. Robertson*, 219 Ill. App. 3d 564, 570 (1991) (due diligence requirement relaxed where court identified problems with the damages award, including a request for damages for which the plaintiff had already received compensation); *Bonanza International, Inc.*, 128 Ill. App. 3d at 719-20 (relaxation of due diligence requirement where, if movant's petition was allowed to proceed and parties went to trial, plaintiff's conduct would be called into question as the amount of damages as alleged in an affidavit would have proven to be inaccurate); compare *McGinley Partners, LLC*, 2018 IL App (1st) 172976, ¶ 33 (mere disagreement about the interpretation of a contract that arguably imposed a damages cap did not demonstrate fraudulent activity by the plaintiff). Further, the concern about the amount of damages was already an issue prior to this litigation, where the record shows that Tristate and plaintiff were continually in disagreement about what property was remaining or its value overall.

¶ 107    Finally, we also observe that plaintiff does not dispute that she did not send out the entered default judgment order to Tristate, or that she sent the order to Tristate's liability insurer more than 30 days after the judgment had been entered. As noted in *Airoom*, "failure to give notice of, or to execute upon, a default judgment within 30 days of its entry may be *a* factor to be considered in determining whether the plaintiff has acted so unfairly as to justify relaxation of the due-diligence standard[.]." (Emphasis in original.) 114 Ill. 2d at 228; see also *Bonanza International, Inc.*, 128 Ill. App. 3d at 720 (observing that the plaintiff's delay of providing notice of a default judgment more than 30 days after its entry before commencing citation proceedings, "although not enough in itself to render a default judgment unfair or unconscionable, has been held to cast a cloud on the proceedings because the standards for vacating a judgment within 30 days of its entry are less stringent than after that period has elapsed."); compare *Illinois Neurospine Institute, P.C.*, 2017 IL App (1st) 163386, ¶ 35 (no requisite circumstances to relax due diligence requirement where the defendant was aware of default judgment and was further sent a copy of the order by the plaintiff's counsel); *European Transpa, Inc.*, 242 Ill. App. 3d at 108 (even though the plaintiffs did not seek enforcement of the default judgment until after 30 days, it was undisputed that the defendants had actual notice of the judgment the day it was entered); *JP Morgan Chase Bank*, 383 Ill. App. 3d at 262 (no evidence of unfair, unjust, or unconscionable circumstances where, although the plaintiff did not provide movant with notice of entry of judgments for default and foreclosure, plaintiff provided notice of the hearing at which such judgments were entered). Again, although we do not excuse Tristate's failure to independently follow its own case, we do take note that, under section 2-1301, Tristate's burden in vacating the default judgment would have been lessened had it filed its petition within 30 days. Compare 735 ILCS 5/2-1301(e) (West 2020) (authorizing a court to set aside a default judgment within 30 days if it deems it to be "reasonable"); see also *In re Haley D*,

2011 IL 110886, ¶ 69 (the "overriding consideration" on a section 2-1301(e) petition is "whether or not substantial justice is being done between the litigants and whether it is reasonable, under the circumstances, to compel the other party to go to trial on the merits.")[17]

¶ 108   In sum, although we agree that Tristate did not meet its burden in showing due diligence in the underlying action, we do not find that the circuit court unreasonably determined that the equities in this case called for the litigation to proceed fully on the merits. The court's assessment of the documentary record indicates that it viewed enforcement of the default judgment to be otherwise unfair to Tristate based on the circumstances, and although reasonable minds may differ as to whether plaintiff or her counsel's actions were specifically intended to unfairly procure an unjust advantage in the litigation, we cannot say that an opposite conclusion is *clearly* evident. We also strongly reiterate that it is our assessment of *all* of the parties' actions in this case, both prior to and after the filing of the complaint, that compel this result. Accordingly, we affirm the circuit court's judgment.

¶ 109                                    III. CONCLUSION

¶ 110   For the reasons stated, we affirm the judgment of the circuit court.

¶ 111   Affirmed.

---

[17]We note in passing that most of Tristate's cited case law in support of the due diligence requirement on a 2-1401 petition were not actually cases concerning 2-1401 petitions, but rather, 2-1301 petitions. See *John Isfan Construction*, 2016 IL App (1st) 143211, ¶ 3; *In re Haley D*, 2011 IL 110886, ¶¶ 60, 66-68; *Havana National Bank v. Satorius-Curry, Inc.*, 167 Ill. App. 3d 562, 564-65 (1988); *Stotlar Drug Co. v. Marlow*, 239 Ill. App. 3d 726, 728-29 (1993); *In re Marriage of Jackson*, 259 Ill. App. 3d at 542.